CORN v. SKILLERN.

LOWENBERG v. SKILLERN.

Opinion delivered April 22, 1905.

1. SALE OF BANK STOCK—GOOD FAITH.—Where a stockholder in a bank corporation in due course of trade sold his stock to the cashier of the bank without having any reason to believe that the bank was insol-vent, or that the cashier was using the money of the bank in purchas-ing his stock, the sale was valid, and the money paid therefor became the property of the seller. (Page 152.)

2. SAME—NOTICE OF INSOLVENCY.—Where stockholders of a bank cor-poration, knowing that the bank was insolvent, sold their stock to the cashier, and were paid out of the bank's assets, the effect of the .

transaction was a withdrawal of their stock from the bank on account of its insolvency, in fraud of its creditors, and such payments may be recovered by the receiver of the bank for the benefit of its creditors. (Page 153.)

3. INSOLVENT CORPORATION—STOCK DIVIDEND—RECOVERY.—A stock dividend received by the stockholders in an insolvent corporation, which was paid out of the capital stock of the corporation, may be recovered from them by the receiver for the benefit of the creditors. (Page 154.)

Cross appeals from Howard Chancery Court.

Reversed in part.

JAMES D. SHAVER, Chancellor.

*W. C. Rodgers,* for appellant Corn.

The statutory liability of an officer or stockholder of a corporation cannot be enforced by the receiver of the corporation. 2 Morse, Banks & Banking, § 696; Morawetz, Priv. Corp. § 869; Thompson, Corp. § 3560; Beach, Corp. § 716; 90 Md. 711; 12 Fed. 454; 17 Oh. St. 86; 166 Mass. 414; 96 Ill. 135; 91 N. Y. 308; 147 Ind. 238; 25 Colo. 551; 25 Minn. 543; 110 Ind. 458; 89 Ill. 25; 71 Ark. 1. Such statutes are construed strictly. 59 Ark. 244; 71 Ark. 556. Concerning money and negotiable instruments, lost or stolen, the *bona fide* holder for value shall retain title against the former owner. 54 Ark. 70. A corporation can be rescued by a receiver. 36 Conn. 325; 7 Hun, 63; 81 U. S. 383; 2 Morse, Banks & Banking, § 150*a*. The appointment of a receiver cannot affect the right of a creditor to enforce the statutory liability. 12 Blatchford, 341; 89 Ill. 25; 91 N. Y. 308. As between the parties themselves, a fraudulent transaction is binding. 10 Ark. 53; 11 Ark. 411; 13 Ark. 593; 47 Ark. 301; 13 Colo. App. 116. Payment for stock subscribed is the only liability imposed on the stockholder at common law. 71 Fed. 60; 34 Ark. 323; 102 U. S. 422. Fraud must be affirmatively shown. 62 Ark. 16; 67 Ark. 97; 63 Ark. 16. Circumstances of mere suspicion are not sufficient. 38 Ark. 419; 17 Ark. 146.

*D. B. Sain, W. D. Lee* and *Cantrell & Loughborough,* for appellee.

Appellant was not a *bona fide* holder of the property. 28 Am. & Eng. Enc. Law, 1108; 38 Ark. 18. A corporation cannot

give a preference among creditors. 67 Ark. 11; Kirby's Dig. § 945; Morse, Banks & Banking, § 623.

*Feazel & Bishop,* for appellant Lowenberg.

The receiver had no right to maintain the suit. 5 Cyc. 445; 34 Ark. 323; 120 U. S. 747; 25 Minn. 543; 35 Pa. St. 275; 146 Ill. 472; Thompson, Stockholders, § 56; 80 N. Y. 441; 106 Wis. 256; 96 Ill. 135; 27 Hun, 307; 91 N. Y. 308; 25 Colo. 521; 53 S. Car. 583; 87 Fed. 113. The assets of the bank must first be exhausted, and the deficiency ascertained. 132 Ill. 179; 87 Tenn. 60; 93 U. S. 228; 146 U. S. 657; 147 N. Y. 603; 113 U. S. 302; 71 Ark. 1; 110 Ga. 827; 95 Cal. 581; 16 Ga. 217; 100 Ill. 225; 40 Ia. 648; 77 Me. 465; 115 Mass. 380; 43 Mo. 452; 49 Neb. 353; 148 N. Y. 9; 17 Oh. St. 86; 85 Pa. St. 75; 6 R. I. 154. The stock was withdrawn by the defendants. 66 Ark. 329; 120 Mich. 1.

*D. B. Sain, W. D. Lee* and *Cantrell & Loughborough,* for appellee.

The receiver had authority to maintain the suit. 23 Am. & Eng. Enc. Law, 1078; Thompson, Corp. § 2963; Cook, Corp. § § 312, 548; 37 Fed. 521; 66 Fed. 9, 119; 36 Minn. 369; 15 How. 304; 44 Minn. 37; 17 Wall. 619; Gluck & B. Receivers of Corporations, 58; 72 Mo. 424; 54 Hun, 347; Thompson, Corp. § 3561. Suit can be maintained before the assets are exhausted and the deficit ascertained. Thomp. Corp. § § 1548, 1553, 2954; 7 Am. & Eng. Enc. Law, 820; 54 Mo. 429. It is immaterial whether the transactions were sales of stock or not. Kirby's Dig. § 853; 66 Ark. 327. Stockholders are conclusively presumed to know of the insolvency of the bank. Cook, Corp. 1022; Ang. & Ames, Corp. 1022; Morawetz, Corp. § 789; 3 Mason, 308; 38 Ark. 25. Appellants had no title to the property turned over by Terry. 44 Ark. 210; Cobbey, Replevin, § 410. The property could be followed in the hands of appellants. 28 Am. & Eng. Enc. Law, 1112; Kirby's Dig. § 951. Appellants' stock had no value to support a transfer of the bank's assets. 67 S. W. 985; 23 Am. & Eng. Enc. Law, 488; 86 Wis. 538; 13 Ark. 159; 63 Ark. 604. Appellants are liable for the dividends received by them. Cook Corp. 1026; 103 Ala. 358; Ang. & Ames, Corp. § 600; Morawetz, Corp. § 789; 38 Ark. 25; Thomp. Corp. § § 2152, 2957.

BATTLE, J.   The Howard County Bank  is  a  corporation organized under the laws of Arkansas, with a capital stock of $25,000.   It did business at Nashville, Ark., and among its stockholders were D. P. Terry, J. H. Grumbles, C. V. Lowenberg, J. S. Corn, W. P. Feazel, A. L. Skillern, and N. M. Harrison, all residents of Nashville, Ark. J. S. Corn and W. P. Feazel, each, owned $500 of stock, and C. V. Lowenberg and A. L. Skillern, each, $1,000.   Grumbles was president, and D. P. Terry was its manager and cashier.   On the 15th of January, 1903, the bank declared a dividend of ten per cent. on its stock, and each of the stockholders received that amount on his stock.   On February 10 or 11, 1903, A. L. Skillern transferred his stock to D. P. Terry, the consideration being the surrender of a note made by Skillern to the bank for an amount equal to the par value of his stock. C. V. Lowenberg was a married woman, and on the afternoon of February 12, 1903, her husband, I. Lowenberg, returned to Nashville, Ark., from a trip, and in the evening of that day transferred the stock of his wife to Terry, securing therefor the cancellation of a note that she owed to the bank. W. P. Feazel was a lawyer, and at that time one of the attorneys for the bank.  About midnight of the 12th of February, 1903, he transferred his stock to Terry, and received therefor a check of Terry on the bank for an amount equal to the par value of his stock. This check was afterwards paid.   He testified: "On the morning of the 13th, between midnight and day, I received a telephone message from Terry, or some one at his house, for me to come down to his house.  So I went there, and he asked me if I had my certificate of stock from the Howard County Bank where I could get to it. I told him I had, and asked him the question why.   He said, 'Well, I am ready to take it up.'   *   *   *   I then asked him what was the matter.   I thought it was strange that he would want to buy the stock at that time of night.   He stated to me that the Planters' Bank had refused to clear with him on the evening of the 12th, and that it had been telephoned to Mineral Springs and Center Point and the depositors had become unnecessarily alarmed, etc.   *   *   *   I then went home, and got my certificate, brought it to him, and had Mr. Bishop write the transfer of it."

About midnight of the 12th of February, 1903, I. Lowenberg, A. L. Skillern, Feazel, and others assembled at Terry's residence. On the next day D. P. Terry, a stockholder of the bank, filed his complaint in the chancery court of Howard County, "alleging that the liabilities and nominal assets of the bank were about the same; that it was insolvent, and unable to carry on business successfully, and asked that a receiver be appointed to take charge of the affairs of the bank, and pay the creditors ratably according to their claims, and for a dissolution of the corporation." Upon the presentation of the complaint to the chancellor, J. H. Skillern was appointed receiver, and all the powers mentioned in section 6348 of Kirby's Digest were conferred upon him. Thereafter the receiver instituted separate suits against Corn, Lowenberg, A. L. Skillern and Feazel to recover the respective amounts paid each of them for stock and dividends, styling them (suits) "intervention in D. P. Terry v. Howard County Bank." The defendants filed separate answers. The suit against Corn was disposed of in a separate decree. The court rendered a decree against him in favor of the receiver for the sum of $380, the balance paid him for his stock on or about the 12th of February, 1903, and six per cent. per annum interest thereon from that day, but did not hold him liable for the $50 paid him as a dividend. Both parties, plaintiff and defendants, appealed. The suits against Lowenberg, A. L. Skillern and Feazel were disposed of in one decree. The court rendered a decree against Lowenberg and A. L. Skillern, each, in favor of the plaintiff, for the sum of $1,000, and six per cent. per annum interest thereon from the 12th of February, 1903, and against Feazel, in favor of the receiver, for $500, and six per cent. per annum interest, etc.; but held that these defendants, Lowenberg, A. L. Skillern, and Feazel, were not bound to refund the dividends received by them. All the parties appealed.

J. S. Corn, being financially embarrassed, in December, 1902, proposed to D. P. Terry to sell and transfer to him his stock in the Howard County Bank, which amounted to $500. Terry accepted the proposition, but suggested that he wait until the 15th of January following, when a dividend on his stock would be declared. A short time after the 15th of January he received a letter, containing a statement as to the condition of the bank

and a check for $50 as a dividend on his stock. A few days after this he asked Terry to complete his purchase. Terry, being busy, postponed the· business until a future day. On the 2d day of February, 1903, he (Corn) made a trip to Vanndale, Ark. Prior to leaving he again asked Terry to complete his purchase, but this was again postponed, Terry agreeing to pay two of his debts, amounting in the aggregate to $120, which he did. When he returned, Terry paid him $380, the balance due on his stock. The transfer thereof was made on the 2d day of February, but it was not delivered until the 12th of February, 1903. The sale was made by Corn in good faith. The statement furnished him as to the condition of the bank showed that its assets were equal to its liabilities. The bank had paid its debts as they matured and were presented until about the 12th of February, 1903. Terry was its cashier, and was earning $2,000 a year, besides the dividends on his stock, and had other property. There was no evidence to show that Corn had any reason to believe that he (Terry) was using the money of the bank in purchasing his stock. It was sold and paid for in the usual course of trade. The sale was valid, and the money paid therefor became the property of Corn. *Jetton* v. *Tobey,* 62 Ark. 88 ; *Fawcett* v. *Osborn,* 32 Ill. 411 (cited in *Jetton* v. *Tobey* as *Fawcett* v. *Osborn,* 42 Ill. 411) ; notes in *Williams* v. *Merle,* 25 Am. Decisions, 610, and cases cited.

The appellants, C. V. Lowenberg, A. L. Skillern, and W. P. Feazel received the amounts for which they held stock in the bank at the time it failed to meet its liabilities ; Lowenberg on the afternoon of the 12th of February, 1903, Skillern on the 10th or 11th of the same month, and Feazel, on the night of the 12th of the month, after midnight. The bank was then hopelessly insolvent. Lowenberg, A. L. Skillern, and Feazel evidently anticipated the coming crash. All the circumstances proved by the evidence clearly indicate that the payment of the sums of money to them for stock was the withdrawal of their stock from the bank on account of its insolvency, and for the purpose of preventing the same being appropriated to the payment of creditors. Such withdrawal was fraudulent and void. Under the statutes of this State, it was the duty of the court, in the suits instituted against the defendant, and it undertook, to take charge of all the

assets of the bank, and distribute them among its creditors. Kirby's Dig. § 950. For that purpose it appointed a receiver. The amounts paid to Lowenberg, A. L. Skillern and Feazel on account of stock are recoverable by him, under the statutes of this State, for the benefit of creditors, in the suits instituted by him for that purpose. Kirby's Dig. § § 861, 6348.

The majority of this court is of the opinion that the evidence in these cases proves that the dividends received by the appellants were paid out of the capital stock of the bank, and that the receiver ought to recover the same in these suits. They have no right to hold them (dividends), and were in duty bound to refund. 2 Cook, Corporations (4th Ed.), § 548, and Thompson's Commentaries on Corporations, § § 2152, 2957.

The decree against Corn for $380 is reversed, and as to that amount a decree is rendered here in his favor; and the decree in his favor as to the dividend received by him is reversed, and a decree for the same ($50) and interest thereon from the 13th day of February, 1903, is rendered against him in favor of the receiver.

The decrees against the other defendants are affirmed, and the decrees in their favor as to the dividends respectively received by them are reversed, and a decree is rendered against each of them in favor of the receiver for the dividend received by him (that being $100, each, by Lowenberg and Skillern, and $50 by Feazel) and interest thereon from the 13th of February, 1903.