BAILEY v. O'NEAL.

Opinion delivered November 8, 1909.

1.  CORPORATIONS—LIABILITY OF DIRECTORS—PARTIES.—Under Kirby's Digest § § 863, 864, providing that if the directors of a corporation shall intentionally neglect or refuse to comply with the provisions of the act of April 12, 1869, or to perform the duties required of them, or if any corporation shall violate any of the provisions of such act, and the directors order or assent to such violation, they shall be liable for the debts of such corporation contracted during such neglect or refusal, or after such violation, *held* that an action may be brought by creditors of an insolvent bank directly against the directors, without making the receivers of the bank parties.   (Page 329.)

2.  SAME—WHEN DIRECTORS LIABLE.—Kirby's Digest, § § 863, 864, do not make the directors of a corporation liable for a single act of negligence on the part of the executive officers of the bank; but they make them liable for 'a series of connected acts of negligence continued for such a length of time that it must be inferred that their acts were intentional.  (Page 331.)

3.  BANKS AND BANKING—LIABILITY OF DIRECTORS.—Where the directors of a bank knowingly permitted the cashier to pursue for a number of years a reckless course of dealing, the probable consequence of which would be the insolvency of the bank, they will be held liable to the creditors of the bank.  (Page 332.)

Appeal from Independence Circuit Court; *Frederick D. Fulkerson*, Judge; affirmed.

*Stuckey & Stuckey, Gustave Jones, S. D. Campbell* and *Morris M. Cohn*, for appellants.

Trustees are not held responsible for the *devastavit* which co-trustees may perpetrate.  141 U. S. 151; 30 Fed. 307; Story's Eq. Jur. § 1280; Perry on Trusts, § 417.  Directors of corporations may delegate duties to cashiers as well as to presidents. 77 Ark. 172; 62 Ark. 33; 66 Ark. 327; 141 U. S. 132; 155 Mo. 1; 87 Ky. 574; 147 Pa. St. 140; 12 Serg. & R. 256; 8 Wheat. 338; 91 Fed. 587; 33 C. C. A. 222; 183 Mo. 552; 82 S. W. 76. Directors are not trustees.  59 Ark. 562; 71 Ark. 438. The court will take judicial notice of the usages and customs of banking. 4 Ark. 302; 12 Ark. 645; 45 Ark. 347; 77 Ark. 172; 6 Ark. 292; 67 Ark. 243.   There is no privity between a director and a depositor of a bank.  155 Mo. 232; 96 N. W. 1033; 67 Mo.

256; 183 Mo. 552; 82 S. W. 76; 105 N. W. 924; 15 S. W. 448; 89 Tenn. 633; 73 O. St. 275.

A creditor cannot maintain an action against the directors for nonfeasance of duty. 9 W. Va. 580; 155 Mo. 271; 67 Mo. 264; 183 Mo. 570. The neglect of the director must be an intentional neglect or refusal. 37 Mich. 217; 102 Mich. 547; 61 N. W. 9; 155 Mo. 232; 206 U. S. 158. A cashier, when intrusted with the duty of making loans, is not responsible for an error of judgment when he has exercised reasonable skill, diligence and prudence. 48 N. Y. 305. Directors are not liable for mistake of judgment. 71 Pa. St. 11; 147 Id. 140; 82 Wis. 460; 52 N. W. 600. A director is not presumed to know the contents of the books of the bank of which he is director. 141 U. S. 162; 15 S. W. 335; 89 Tenn. 630; 126 N. Y. 113. A bank is not insolvent under the law unless it is unable to meet its liabilities as they accrue. 29 N. W. 166; 54 S. W. 226; 152 Mo. 522; 92 N. W. 420; 75 Ark. 153.

HART, J. W. R. O'Neal and S. Heineman brought separate suits in the Jackson Circuit Court against A. D. Bailey, George W. Decker, Thomas J. Graham, J. M. Jones, Joseph M. Stayton, E. P. Shoffner and T. S. Stephen. The complaint in each case, in substance, alleges that the Bank of Newport was a corporation, organized under the laws of the State of Arkansas, and was engaged in carrying on a general banking business at Newport, Arkansas. That the plaintiff was a depositor in said bank, and that the defendants were directors thereof. That said bank became insolvent, and on the 20th day of April, 1906, a receiver was appointed by the chancellor of the Jackson Chancery Court to take charge of its affairs. That the defendants as directors of said bank intentionally neglected and refused to perform the duties required of them by statute, and that thereby the bank became insolvent. Wherefore plaintiff asks judgment for the amount due him as a depositor of said bank. The defendants answered, denying any liability under the statutes.

The cases were consolidated for purpose of trial, for the reason that they were cause of a like nature and relative to the same question. (See Acts of 1905, p. 798.) On petition of the defendants a change of venue was granted to the Independence Circuit Court. The cause was heard before a jury, and at the

conclusion of the testimony, after hearing the argument of counsel on the instructions, the court directed the jury to return a verdict in favor of the plaintiffs, which was accordingly done. From the judgment rendered upon the verdict the defendants have appealed to this court.

It is first insisted by counsel for the defendants that the plaintiffs, as creditors of the bank, could not maintain the action, but that it should have been brought by the receivers. In considering this question it may be well to set out all our statutes that may have any bearing on the subject. They are the sections of Kirby's Digest, which read as follows:

"Sec. 841. The stock, property, affairs and business of every such corporation shall be under the care of, and shall be managed by, not less than three directors, who shall be chosen annually by the stockholders at such time and place as shall be provided by the by-laws of said corporation, and shall hold their offices for one year, and until others shall be chosen in their stead."

"Sec. 848. The president and secretary of every corporation shall annually make a certificate showing the condition of the affairs of the corporation," etc.

"Sec. 859. If the president or secretary of any such corporation shall neglect or refuse to comply with the provisions of section 848 and to perform the duties required of them respectively, the persons so neglecting or refusing shall jointly and severally be liable to an action founded on this statute for all debts of such corporation contracted during the period of any such neglect or refusal."

"Sec. 862. If the directors of any such corporation shall declare and pay a dividend when the corporation is insolvent, or any dividend the payment of which would render it so, the directors assenting thereunto shall be jointly and severally liable in an action founded on this statute for all debts due from any such corporation at the time of such dividend."

"Sec. 863. If the president, directors or secretary of any such corporation shall intentionally neglect or refuse to comply with the provisions of this act, and to perform the duties therein required of them respectively, such of them as so neglect and refuse shall be jointly and severally liable, in an action founded

on this statute, for all the debts of such corporation contracted during the period of any such neglect or refusal."

"Sec. 864. If any corporation, organized and established under the authority of this act, shall violate any of its provisions, and shall thereby become insolvent, the directors ordering or assenting to such violation shall be jointly and severally liable, in an action founded on this statute, for all debts contracted after such violation as aforesaid."

In construing sec. 859, this court has recognized the right of the creditor to bring the suit against the officers of the corporation. *Nebraska National Bank* v. *Walsh,* 68 Ark. 633; *Beekman Lbr. Co.* v *Ahern,* 75 Ark. 107; *Myar* v. *Poe,* 79 Ark. 465; *Jones* v. *Harris,* 90 Ark. 51.

It is true that in *Fletcher* v. *Eagle,* 74 Ark. 585, a case precisely similar to the one at bar, the suit was brought by the creditors in the name of the receiver of the bank, but no objection was made on that account, and the case turned on other issues.

In the case of *Beekman Lumber Co.* v. *Ahern, supra,* the court held that when an officer fails to file the annual certificate as required by section 848, and upon discovering his oversight files it, he is not liable for debts thereafter contracted by the corporation until he makes another default in filing another statement. The reason given for such holding is "that it was the intention of the law to make it to the interest of the officer to file his statement at as early a day as possible, when he discovers the oversight."

The object of each of the statutes is to make the officers named therein liable for the debts of the corporation during the period of their neglect. Liable to whom? Manifestly to the creditors of the corporation; for any other rule would ignore the real policy of the statute, which is for the protection of the creditor. The act expressly provides that the director shall be liable in any action founded on the statute for certain debts of the corporation, and it plainly means that he is liable to the person to whom the debt is due. In each of the sections of the statute above quoted, the liability is directly to the creditor, and not to the corporation. In the case of *Patterson* v. *Stewart,* 41 Minn. 84, the Supreme Court, in a well considered opinion de-

livered by Mr. Justice Mitchell, in construing a similar statute of the State of Minnesota, expressly held that a right of action is given to the creditor directly against the directors, and that the fact that the affairs of the corporation have been placed in the hands of a receiver neither takes away nor suspends this right of action. See, also, 3 Thompson on Corporations, § 4265. In such cases the decision reached must come from the terms of the statutes themselves. Hence there can be no profit in reviewing decisions based upon the common law, or upon statutes unlike those now under consideration.

The most serious question in this case arises upon the merits; and is, did the court err in directing a verdict for the plaintiffs?

In considering this question we must determine whether malfeasance or nonfeasance on the part of the directors is the test of their liability. This action is founded upon sections 863 and 864 of our statutes quoted above. The statute creates the duty to be performed by the directors, and the liability that attaches for a failure to perform that duty. It changes the rule of the common law, and is therefore the exclusive test of liability. Hence it will not be pertinent or useful to consider whether the defendants are liable at common law, and a review of the cases based upon the common law or upon statutes essentially different from our statutes will be passed by.

Our statutes in question have been construed by this court in the case of *Fletcher* v. *Eagle,* 74 Ark. 585. Chief Justice HILL, who delivered the opinion of the court, in discussing the instructions given in the case, said:

"The circumstances mentioned in the sixth instruction, and they are sustained by the evidence, fully authorized the directors to have implicit confidence in England, and justified their selection of him as president; but no circumstances justify directors in committing the management of the bank to the president, further than the duties of that office require. No matter how honest and capable the president is, the directors have their duties to perform, and cannot fail to perform them because their confidence in the president renders them unnecessary in their opinion. It was their duty as directors to perform the functions required of them by statute, common usage and the by-laws of

the corporation, and any committal of management to the president, which meant a nonfulfillment of their duties as directors, was negligence for which they are liable, provided other facts fixing their liability were present." See also *Patterson* v. *Stewart, supra.*

Section 841 requires that the affairs and business of the corporation shall be under the care of, and shall be managed by, the directors of such corporation.

By law certain duties also devolve upon the cashier of a bank. The cashier and directors of a bank stand in a reciprocal relation to each other. The duties of a cashier are rather executive, and those of the directors, administrative. They have the power to appoint a cashier, and to confer upon him the powers and duties usually exercised in such an office; but they cannot divest themselves of the duty of general supervision and control. They must not be mere figureheads, and may not confide the exclusive management of the affairs of the bank to the cashier. They cannot rely entirely on his good faith and judgment, and thereby escape liability. In short, the law, by positive enactment, makes it the duty of the directors to manage the affairs of the corporation; and they cannot discharge that duty by delegating it to another person.

Sections 863 and 864 do not make the directors liable for a single act of negligence, however inconsequential; but they make them liable for a series of connected acts of negligence continued for such a length of time as it must be inferred that their acts of negligence were intentional.

Tested by this rule, we are of the opinion that the evidence in this case, considered in its most favorable light to the defendants, renders them liable under our statutes. The testimony taken in the case was very voluminous, and embraced a vast amount of details in connection with the conduct of the affairs of the bank.

Having reached the conclusion that the undisputed evidence in the case makes the directors liable, it will not be necessary to abstract all of the testimony, but only to state the substance of that part of it that goes to fix the liability of the defendants.

The Bank of Newport was organized in 1899, with a capital stock of $50,000, fifty per cent. of which was paid up, for the

purpose of doing a general banking business. It conducted its business as a bank until the 30th day of April, 1906, at which time it applied to the chancellor of the Jackson Chancery Court in vacation for a receiver, stating in its petition therefor that it was insolvent. Alcorn Ferguson and T. D. Kinman were appointed receivers. At the time of its application for a receiver the plaintiffs were depositors of the bank, and the defendants were its directors. Almost from its inception C. B. Kelley, and the Kelley Lumber Company, of which he was the principal stockholder, were the principal borrowers from the bank. The indebtedness of the Kelley Lumber Company, and the various other subsidiary corporations chiefly owned by C. B. Kelley, increased their debt to the bank by progression. In the statement for 1902 the indebtedness of the Kelley companies to the bank had increased to over $70,000. The statement for 1903 shows the amount to exceed $120,000. For 1904 the bank's statement shows that it had increased to $157,415, and for 1905 it had reached the sum of $162,197.43. The condition of the bank on April 28, 1906, the time of its failure, in short was as follows: Liabilities $241,684.00; assets, $324,154.44; Kelley indebtedness $174,646.94.

The Kelley indebtedness was never secured by anything except the stock of the various companies. In September, 1903, it had reached the sum of $80,000. V. Y. Cook, then one of the directors of the bank, began to complain of this increase, and ordered it stopped. In November of that year he resigned. All the directors knew that the Kelley indebtedness was rapidly increasing, and that no security other than the stock of the companies was being given to the bank. They knew that the Kelley Lumber Company was in the business of running a sawmill, and that the ability to pay the debt depended upon the profits of the business. All of the directors had been in office since 1903, and most of them for several years prior to that time. They all knew and recognized the hazard of the enterprise engaged in by Kelley. They talked over the situation in 1903, and knew that the debt was being rapidly increased. They knew that prospect of paying the Kelley indebtedness depended entirely upon the profits to be made by the companies. They knew that the failure of the bank would cause the failure of the Kelley corpo-

rations, and must have known that if the Kelley companies increased their indebtedness it would mean the insolvency of the bank, yet they took no steps to obviate the impending danger to the solvency of the bank. They say they relied entirely in the matter upon the cashier. No more than one-half of the subscribed capital stock was ever paid up. Here we have the anomalous condition of directors, whose duty it was to manage the affairs of the bank, allowing the cashier to lend to one man and his various enterprises, without security, sums of money largely in excess of the capital stock of the bank, and to continue that course of dealing for a period of several years.

In 1903 the debt had been increased to $80,000. With a knowledge of this fact, they still permitted the cashier to pursue the same reckless course of dealing, so that at the time of the failure of the bank the indebtedness had been increased to the sum of $174,646.94. The inevitable result of such management of the affairs of the bank was the insolvency of the bank and of the Kelley Lumber Company and its subsidiary corporations. Reasonable minds could come to no other conclusion, and the defendants must be presumed to have intended the natural and probable consequences of such acts of negligence on their part which continued for a period of several years, and to have assented to the negligent acts of the cashier. To hold otherwise would be to say that the statute imposes no duty on the directors other than to elect a cashier whom they believe to be competent, and then to turn over to him the management of the bank. Such was not the intention of our lawmakers. They prescribed certain positive duties upon the directors, and imposed certain liabilities upon them for the intentional neglect of these duties, and for assenting to such violation whereby the corporation becomes insolvent; and we are of the opinion that the facts and circumstances in this case will lead all fair-minded men to believe that the directors must have known that their neglect of their duties would lead to the insolvency of the bank. Therefore, there was no question of fact to be submitted to the jury, and the trial court was right in directing a verdict for the plaintiffs.

Having reached this conclusion from the evidence, admittedly competent, it is not necessary to review the assignments

of error in regard to the admission and exclusion of evidence; for no prejudice could have resulted to the defendants in that regard.

Finding no prejudicial error in the record, the judgment will be affirmed.