FORTE *v.* CHAMBERLIN.

Opinion delivered January 3, 1910.

1. INSURANCE—LIABILITY ON BOND OF MUTUAL COMPANY.—According to the terms of act of April 24, 1905, regulating mutual fire insurance

companies, the liability of the sureties upon the bond for $15,000, therein provided for, is (*a*) to pay to policy holders all losses sustained by them on property in Arkansas, and (*b*) to pay a sum sufficient to replace any deficit in the reserve of fifty per centum of the premium caused by the unauthorized use of such reserve for purposes other than the payment of losses, the action on the last named liability to be instituted by the Auditor of State. (Page 114.)

2.  SAME—POWERS OF RECEIVER OF INSOLVENT INSURANCE COMPANY.—While a receiver of an insolvent mutual insurance company is authorized to enforce the rights of the corporation, he is not entitled to sue the sureties of such company upon the $15,000 indemnity bond given under the act of April 24, 1905, their liability being collateral merely, and not an asset of the corporation. (Page 115.)

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; reversed.

*Carmichael, Brooks & Powers,* for appellant.

Appellants at the time they were enjoined were pursuing a plain statutory remedy in a court of equal and concurrent jurissuit against the bond. Acts 1905, § § 4 and 6, approved April from a policy holder who has suffered a loss, the Auditor of State is the only person to whom authority is given by statute to bring suit against the bond. Acts 1905, § § 4 and 6, approved April 24, 1905. The statute under which the receiver was appointed comprises § § 949 to 952, inclusive, Kirby's Dig. The bond is not an asset in the hands of the receiver. The word assets used in the statute, § 950, was used in its legal sense, and, when applied to a corporation, embraces its real estate as well as personal property, stock and choses in action. 2 Pears. (Pa.), 38, 39; N. Y. Laws, 1869, c. 902; 3 N. E. 193-4; 100 N. Y. 279. The liability upon the bond is nothing more than a chose in action, and not such a chose in action as belongs to the corporation, because it could never maintain a suit upon it. 36 L. R. A. 647; 91 N. Y. 308; 180 Ill. 608; 72 Am. Dec. 236. See also 47 L. R. A. 620, 621; 38 L. R. A. 418. The statutory liability is to the creditors. The corporation could not enforce it, and where the corporation could not sue, the receiver cannot. Beach on Receivers, 433; High on Receivers, § 315; 20 Am. & Eng. Enc. of L. 13. The right of action against the bondsmen is only upon fire losses. Kirby's Dig., § § 4376, 4377.

*T. N. Robertson* and *Horace Chamberlin,* for appellees.

The chancery court was correct in exercising jurisdiction

over the affairs of the insolvent insurance company, and in appointing à receiver. Kirby's Dig. § § 950, 951, 952 and 954, 6342, 6348. In addition to the statutory grounds, the fact that claims in excess of the limited liability on the bond were filed with the receiver, and the fact that all the bondsmen were not equally liable on all claims, constitute grounds for equity jurisdiction. If the statute *supra,* § § 950-954, enacted in 1893, conflicts with § 4376, relied upon by appellants, and enacted in 1891, the later law will prevail. 6 Ark. 24; 27 Ark. 4½9; 40 Ark. 448. For further authorities as to jurisdiction of the chancery court, see 93 U. S. 228; 113 U. S. 302; 92 Md. 245; 41 Minn. 91; 84 Fed. 10; 29 C. C. A. 529; 102 Ill. 350.

The bond was an asset in the hands of the receiver. Kirby's Dig., § 6348; 3 Cyc. 1111; 44 Minn. 37; High on Receivers, § § 314, 316, 317a; 107 Mo. 590; 74 Mo. 516; 103 Mo. 212; 75 Ark. 40.

McCulloch, C. J. The Commercial Fire Insurance Company, a mutual fire insurance corporation, was by order of the Pulaski Chancery Court, at the instance of certain creditors and stockholders, on allegations of insolvency, placed in the hands of a receiver to wind up its assets and affairs, and appellee was appointed as such receiver. Authority for the proceeding is found in the following statute:

"Any creditor or stockholder of any insolvent corporation may institute proceedings in the chancery court for the winding up of the affairs of such corporations, and upon such application the court shall take charge of all the assets of such corporation and distribute them equally among the creditors after paying the wages and salaries due laborers and employees." (Sec. 950, Kirby's Digest.)

The corporation had given, and prosecuted its business as an insurance company under, certain bonds required by the act of the General Assembly, approved April 24, 1905, entitled, "An Act to regulate mutual fire insurance companies." Section 4 of that act provides that, "before any such company or association shall do business in this State, it shall file in the office of the Auditor of State a qualified indemnity bond with three or more sureties or with a surety or trust company authorized to do business in this State, to be approved by the Auditor, in the sum of

fifteen thousand dollars, to be conditioned for the prompt payment of all claims arising and accruing to any person or persons during the term of said bond by virtue of any policy issued by any such company or association upon any property in Arkansas, whenever the same shall become due, and shall faithfully comply with and perform all and singular the duties and obligations imposed upon them by the laws of the State." In the same clause it is further provided that any such company or association may, upon giving an additional bond in the sum of $10,000, conditioned as aforesaid, issue non-assessable policies. Section 6 of the act contains the following provision:

"Any company or association organized and operating under this act shall reserve not less than fifty per centum of its premium for the payment of losses and the benefit of its policy holders, and such reserve shall not be used for any other purpose. Should it come to the knowledge of the Auditor of State that any company or association is not complying with this provision, it shall be the duty of the Auditor of State to institute suit on the bond mentioned in section 4 of this act, in the name of the State for the benefit of the policy holders of such company or association, against the obligors of said bond in any court having jurisdiction thereof, and liability of said obligors on such bonds shall be in a sum sufficient to increase said reserve to an amount equal to fifty per centum of the premiums received, not to exceed, however, the sum of fifteen thousand dollars."

It is, therefore, seen that, according to the terms of the statute, liability on the bond is for losses sustained by policy holders on property in Arkansas, and also for a sum sufficient to replace any deficit in the reserve of fifty per centum of the premiums caused by the unauthorized use of such reserve for other purposes than the payment of losses, the action on the last-named liability to be instituted by the Auditor of State.

Appellants were policy holders on property in Arkansas, and sustained a loss before the insolvency proceedings were instituted, and they instituted an action at law against said corporation and the sureties on one of said bonds to recover the amount of their said loss. The receiver filed a petition in chancery court, praying that appellants be restrained from prosecuting their action against the sureties on said bond, and the court overruled their demurrer

to the petition, and rendered a decree perpetually restraining them from prosecuting said action.

The petition of the receiver sets forth all of the foregoing facts, and in addition it is alleged therein "that the only assets of any appreciable value of the defendant company is the liability of the sureties on the above-mentioned bond, and that the total amount of claims against defendant for losses accruing under policies issued by it, and filed in this cause by intervention, is far in excess of the total assets of said defendant." It is not claimed that any part of the required reserve of fifty per centum of premiums was ever used for any other purposes than the payment of losses, or that there exists any liability on the bonds on that account. The decision of the case turns on the question whether the liability of the sureties on the statutory bonds to holders of policies on property in Arkansas for losses is an asset of the insolvent corporation which passes to the receiver, and whether the receiver can maintain an action on the bonds to enforce such liability. The language of the statute hereinbefore quoted answers both questions against the contention of appellees. The liability on the bonds is to a class of policy holders as creditors, and is in no sense an asset of the corporation. The corporation is principal in the bonds, and could never, under any circumstances, maintain an action thereon, either for itself, its stockholders or any creditor, not even the special class of creditors for whose benefit the bonds were given. It is true that the receiver for an insolvent corporation is the representative of the creditors and stockholders of the corporation as well as the corporation itself, but only to the extent of the assets of the corporation, and not for the enforcement of collateral liabilities to the creditors. *Jones* v. *Harris,* 90 Ark. 51; *Bailey* v. *O'Neal,* 92 Ark. 327.

"While the receiver of an insolvent corporation," says Mr. High, "is thus treated as the representative of both creditors and shareholders, so far as any beneficial interest is concerned, yet, for the purpose of determining the nature and extent of his title, he is regarded as representing only the corporate body itself, and not its creditors or shareholders, being vested by law with the estate of the corporation, and deriving his own title under and through it. For purposes of litigation, therefore, he takes only

the rights of the corporation, such as could be asserted in its own name, and upon that basis only can he litigate for the benefit of either shareholders or creditors except when acts have been done in fraud of the rights of the latter, but which are valid as against the corporation itself, in which case he holds adversely to the corporation." High on Receivers, § 315.

There is a distinction between this case and *Jones* v. *Harris, supra,* where the receiver and the president of an insolvent banking corporation sought to enjoin creditors from enforcing the statutory liability of the president and secretary on account of their failure to file the annual statement required by statute. There the liability of those officers to creditors was an unlimited one, whilst in the present case the liability is limited to the amount of the bond. But this distinction does not operate to the advantage of the receiver in his assertion of the right to enforce liability on the bond for the benefit of creditors. Where the liability is limited, as in the present case, to a certain amount and to a certain class of creditors, the sureties on the bond, or those creditors who are entitled to share in the amount to be recovered on the bond, might insist that the liability be enforced in a court of equity, where a multiplicity of suits could be avoided, and the amount to be recovered could be distributed among those entitled to share. *Hornor* v. *Henning,* 93 U. S. 228. But this is of no concern to the receiver, who in no event can enforce the liability nor be a necessary party to the suit to enforce it. In *Bailey* v. *O'Neal, supra,* we held that an action against the directors of an insolvent corporation for intentional neglect to perform the duties required of them by statute could be maintained by creditors of the corporation. It was insisted by the defendants in that case that the action could be maintained only by the receiver of the corporation.

The only decision of this court which would appear to be in any degree against the conclusion now expressed is in the case of *Corn* v. *Skillern,* 75 Ark. 148, where, under a statute prescribing that "if the capital stock of any such corporation shall be withdrawn and refunded to the stockholders before the payment of all the debts of the corporation for which such stock would have been liable, the stockholders of such corporation shall be liable to any creditor of such corporation, in an action founded

on this statute, to the amount of the sum refunded to them respectively" (Kirby's Dig., § 861), a receiver was permitted to sue for capital improperly withdrawn by stockholders. The effect of that decision was to hold the capital wrongfully withdrawn to be assets of the corporation. The distinction between the two classes of cases is quite clear. High on Receivers, § § 315, 320, 321; *Minnesota Thresher M. Co.* v. *Langdon,* 44 Minn. 37; *Minneapolis Baseball Co.* v. *City Bank,* 66 Minn. 441.

The decision in *Corn* v. *Skillern, supra,* has no controlling force in the present case, for here the liability of the sureties on the bond is purely collateral, and, as has already been stated, is in no sense an asset of the corporation. The conclusion we reach is in accord with the weight of authority. *Runner* v. *Dwiggins,* 147 Ind. 238; *Colton* v. *Mayer,* 90 Md. 711; *Jacobson* v. *Allen,* 12 Fed. 454; *Farnsworth* v. *Wood,* 91 N. Y. 308; *Attorney General* v. *Atl. Mut. L. Ins. Co.,* 100 N. Y. 279; *Wincock* v. *Turpin,* 96 Ill. 135; *Young* v. *Stevenson,* 180 Ill. 608; *Minneapolis Baseball Co.* v. *City Bank,* 66 Minn. 441; *Fourth Nat. Bank* v. *Francklyn,* 120 U. S. 747; *Parker* v. *Carolina Savings Bank,* 53 S. C. 583, 69 Am. St. 888.

The Supreme Court of Indiana, in *Runner* v. *Dwiggins, supra,* states the correct rule, we think, as follows: "Neither a receiver, an assignee in bankruptcy, nor an assignee under a voluntary general assignment for the benefit of creditors, each of whom represents creditors as well as the insolvent, acquires any right to enforce a collateral obligation given to a creditor or to a body of creditors by a third person for the payment of the debts of the insolvent." Precisely the same language was used by Judge Wallace in his opinion in *Jacobson* v. *Allen, supra.*

In *Minneapolis B. B. Co.* v. *City Bank, supra,* the court said: "The right of the receiver, representing the creditors, to recover the capital so given away rests upon the same basis as does his right to recover any other property disposed of by the corporation in fraud of creditors. But there is no analogy between such an action by the receiver to reclaim assets at one time belonging to the corporation, which it has fraudulently transferred, and an action to enforce the individual or double liability of the stockholder for the debts of the corporation. Such liability sustains the relation of surety for the debts of the corporation. Hence,

from its very nature, it is not, and never can be, an asset of the corporation."

Learned counsel for appellee rely mainly upon *Boston & Albany Rd. Co.* v. *Mercantile Trust & Dep. Co.,* 82 Md. 535, which is claimed to be an analogous one in favor of their contention as to the right of the receiver to sue on a collateral obligation for the benefit of creditors. That case is, however, totally different from this. There the company had, whether as a voluntary act or in compliance with a statutory requirement the court found it unnecessary to determine, placed in the hands of the Treasurer of State guaranty funds for the benefit of policy holders, and a court of equity ordered the State Treasurer to surrender these funds to the receiver for distribution among the creditors. The fund in question, though deposited as a guaranty fund to creditors, was nevertheless an asset of the corporation, and was properly placed in the hands of the receiver for distribution among the creditors found to be entitled thereto. The ground of that decision is that the deposit was an asset of the corporation and a trust fund for the benefit of creditors, and therefore the proper subject of equitable control and distribution. No analogy exists between that case and the present one.

As we have already mentioned, there is no allegation of any improper use of any of the reserve of fifty per centum of the premiums, so as to confer a right of action on the bonds in that regard. But, if that were alleged, and if it be conceded that the receiver succeeds to the right of action conferred by statute upon the Auditor of State for the recovery of a sum sufficient to restore the reserve, still that would not give the receiver the right to recover and distribute the full amount of the bonds. He could only recover the sum necessary to restore the improperly depleted reserve. We conclude, therefore, that the decree of the chancellor is erroneous, so it is reversed, and the petition of the receiver is dismissed.