DAVINDER LAROIA, Plaintiff-Appellant, v. PAUL REUBEN *et al.*, Defendants-Appellees.

First District (5th Division)   No. 85—0740

Opinion filed November 1, 1985.

Paul M. Heller, of Chicago, for appellant.

Barsy, Joseph & Lichtenstein, of Chicago (Burton Joseph, of counsel), for appellees.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiff Davinder Laroia appeals from a judgment of the circuit court finding that no partnership arrangement existed between plaintiff and defendants. On appeal he contends that such decision was contrary to the law and the manifest weight of the evidence. We reverse.

Pertinent to our disposition are the following. Defendant Paul Reuben had been engaged in solo practice as a dentist for many

years. Plaintiff had graduated from dental school in 1976 and secured advanced training in children's dentistry. In January 1977 plaintiff was hired by defendant to assist him in his practice. Initially, plaintiff was paid $125 a day and was required to sign a power of attorney granting defendant the right to receive all checks bearing his name. After several months defendant told him that he was very pleased with his work and raised his salary to $160 per day and was planning to soon make him a partner in his practice. In July 1977, when defendant failed to fulfill this promise, plaintiff told defendant that if he was not to be made a partner, he would leave defendant's practice. In response, defendant told him that he was contemplating retirement and wanted to cut back significantly on his working hours and because he valued plaintiff's work, he would agree to enter a partnership with plaintiff. Instead of requiring him to make a monetary contribution to the partnership, defendant expected that plaintiff's contribution would consist of added service to the practice.

Plaintiff testified that on July 18, 1977, he and defendant opened a joint checking account. His name appeared on the printed checks, and he was given signatory power. All patient accounts were changed and receipts for work done after July 18, 1977, were deposited in the partnership account rather than in defendant's individual account. Malpractice insurance was acquired in the names of "Drs. Reuben and Laroia Prtsp." All creditors and suppliers were notified to bill the practice in the partnership name, and plaintiff increased his responsibilities to handle the majority of the patients as well as to oversee the operation of the practice. Specifically, he was to order supplies, hire office personnel, issue payroll checks and make bank deposits and in return he was to receive one-half of all profits as well as having the partnership pay a variety of his personal expenses, including his medical insurance, lunches and charitable contributions, none of which plaintiff had prior to July 18, 1977. Defendant after that time repeatedly referred to him as his partner when speaking to patients and business acquaintances.

He further testified that on August 18, 1977, defendant called him away from a patient and presented an agreement to him for his signature which referred to him as an employee and to defendant as the employer. (In effect, such agreement was a covenant not to compete.) When he was told the document was required to effectuate the partnership, no further discussion occurred, and he signed such agreement and returned to his patient within several minutes. In 1978 and 1979 plaintiff and defendant opened two additional joint bank accounts. In 1977 through 1979 partnership income tax information re-

turns were filed.

In January 1980, defendant spoke to him about incorporating their practice. Approximately one month later, defendant opened a corporate bank account. Defendant presented him with a signature card for the account and informed him that he was designated as treasurer for the corporation. Defendant assured him that everything including his one-half share would remain the same after the practice was incorporated. Plaintiff testified that he had no reason to believe that a corporation had been set up by defendant prior to January 1980.

About six months later he was unexpectedly asked by defendant whether he was unhappy with the practice. Although he assured defendant that he was not unhappy, he was told by defendant that he wanted him to leave the practice. When he attempted to discuss this matter with defendant the following day, he was again told by defendant to leave and was also informed by defendant that a new dentist had been hired. Subsequently defendant offered him $10,000 compensation which he refused.

On cross-examination, plaintiff admitted that all the furniture and equipment possessed by the partnership belonged to defendant and stated that it was defendant's own initial decision to incorporate the practice and to redecorate the office in 1979. On redirect examination, plaintiff explained that the partnership paid defendant a monthly rental expense for the use of the equipment and building.

Art Davies, a certified public accountant, testified that he prepared partnership income tax information returns. The returns indicated that an equal split in income from the partnership had been agreed upon but did not list any capital contributions made by plaintiff. Davies admitted on cross-examination that there was no place on the returns to reflect a contribution of service to the partnership. He stated that while a solo practitioner might have the option of filing individual or partnership returns, a partnership must file a partnership return. The partnership returns filed indicated that the parties each had a net income in excess of $125,000 per year.

Defendant testified that in July 1977, he made an arrangement with plaintiff whereby all fees after expenses would be split equally between him and plaintiff and that several joint bank accounts were opened to facilitate this arrangement. Defendant acknowledged that the practice's expenses included payments to himself for the rental of the premises and dental equipment. He further acknowledged that he presented the no-competition agreement which had been drafted by his attorney to plaintiff and who read and signed it in his presence.

Defendant further testified that from time to time during that practice he spoke to plaintiff regarding patients' complaints that plaintiff was too rough and noncaring; that immediately prior to the time plaintiff left the practice he again spoke to him about this matter, but plaintiff became angry and told defendant he would quit. Five days later plaintiff asked to return to work, but defendant refused.

Defendant asserted that the only occasion in which the nature of the practice was changed occurred in 1980, at which time the practice was changed from an individual practice to a corporation. Thereafter, the parties were named as employees of the corporation and continued to divide the fees as previously done. He denied that he reduced his working hours after plaintiff joined the practice. In contradiction to plaintiff, he also stated that, after plaintiff arrived, he and not plaintiff continued to order supplies, to hire personnel, and to make other decisions affecting the practice. Defendant denied offering plaintiff $10,000 as compensation when he left the practice.

On cross-examination, defendant admitted that after July 1977 the practice paid a variety of plaintiff's personal expenses but did not do so prior to that time. He also admitted that he decided to give plaintiff a one-half split of the fees in July 1977 because he was interested in retiring at that time and was tired of the employment problems he was having. He further admitted that during his conversation with plaintiff in July 1977, he told plaintiff that a joint bank account would be set up and that he would begin to sign the checks, order supplies and watch over the office and that he presented the no-competition agreement to plaintiff one month after the parties first agreed to their equal division of fees and set up their joint bank account. He could not remember the circumstances surrounding the signing of the agreement, first stating that an office worker was present during the parties' brief conversation, but later changing this statement. Defendant testified that while he spoke periodically to plaintiff about patients' complaints since the time defendant joined the practice he nevertheless offered plaintiff the equal fee arrangement and did nothing more to remedy this alleged condition.

Defendant further testified that he first spoke to plaintiff about incorporating the practice in September 1979 and formed the corporation several weeks later. After plaintiff left the practice, he retained a new dentist within two days to replace plaintiff.

At the close of this testimony the trial court found that plaintiff had failed to establish that a partnership existed, indicating that it was influenced by the fact that there was no written partnership agreement, and finding that the no-competition agreement was evi-

dence to the contrary. The court also noted that no capital contribution was made by plaintiff.

OPINION

■■ On appeal, plaintiff asserts that the trial court's finding was against the manifest weight of the evidence. It is settled that, while a trial court's holding is always subject to review, this court will not disturb a trial court's finding and substitute its own opinion unless the holding of the trial court is manifestly against the weight of the evidence. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 226 N.E.2d 624; *City of Carbondale v. Grose* (1971), 49 Ill. 2d 367, 273 N.E.2d 832; *Reese v. Melahn* (1973), 53 Ill. 2d 508, 292 N.E.2d 375; *State Farm Insurance Co. v. Smith* (1977), 66 Ill. 2d 591, 363 N.E.2d 785.) Manifest weight has been defined as that weight which is clearly evident, clear, plain and indisputable. (*State Farm Insurance Co. v. Smith* (1977), 66 Ill. 2d 591, 363 N.E.2d 785; *Singles v. Horwitz* (1975), 34 Ill. App. 3d 973, 342 N.E.2d 220.) We may not overturn a judgment merely because we might disagree with it or might, had we been the trier of fact, have come to a different conclusion. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 226 N.E.2d 624; *Reese v. Melahn* (1973), 53 Ill. 2d 508, 292 N.E.2d 375; *Greene v. City of Chicago* (1978), 73 Ill. 2d 100, 382 N.E.2d 1205.) However, we will not hesitate to do so where the evidence overwhelmingly supports the opposite conclusion. *City of Carbondale v. Grose* (1971), 49 Ill. 2d 367, 273 N.E.2d 832.

■ Section 6 of The Uniform Partnership Act defines a partnership.

"A partnership is an association of two or more persons to carry on as co-owners a business for profit." (Ill. Rev. Stat. 1977, ch. 106½, par. 6(1).)

In the absence of a written partnership agreement, the existence of a partnership relation is a question of intention to be inferred from the acts and conduct of the parties. (*Ramacciotti v. Simpkins* (1970), 130 Ill. App. 2d 733, 266 N.E.2d 700; *SRI Corp. v. First National Bank* (1979), 75 Ill. App. 3d 350, 393 N.E.2d 1287.) Written articles of agreement are not necessary because a partnership may exist under a verbal agreement, and circumstances may be sufficient to establish such an agreement. *Kurtz v. Kurtz* (1956), 10 Ill. App. 2d 310, 134 N.E.2d 609.

■ In the instant case, we find that substantial evidence existed which would indicate that the intent of the parties was to form a partnership on July 18, 1977. It is undisputed by defendant that on that

date he agreed to split all fees earned from the practice with plaintiff on an equal basis. From plaintiff's testimony that he was previously paid $125-$160 per day and from an examination of the practice's income tax returns indicating gross income of over $300,000 per year, we note that plaintiff's income increased several fold as a result of such agreement showing the parties' equal division of fees. We believe it is unlikely that plaintiff would be so compensated by defendant were he to be regarded as only an employee. We also note testimony by both plaintiff and defendant that after July 19, 1977, plaintiff charged personal expenses to the practice, such as medical insurance, lunches and charitable contributions which he was not permitted to do before that time. We find from this evidence that plaintiff was an owner in the practice and not merely an employee.

Beginning on July 18, 1977, three joint bank accounts were eventually opened by the parties, designated "partnership" accounts, into which deposits were made by both parties and from which both were permitted to make withdrawals. In addition, the parties filed partnership information tax returns for 1977 through 1979 and purchased malpractice insurance which designated itself as a partnership. We also consider evidence that the parties held themselves out as a partnership to business acquaintances and to their creditors, requesting billing to the partnership account. We further note that beginning July 18, 1977, all patient accounts were to be changed so that fees paid thereafter would be deposited into the new joint account.

In considering the no-competition agreement signed by plaintiff on August 15, 1977, we find that the trial court placed too much significance on such agreement. This document was presented by defendant to plaintiff more than one month after the time at which it is undisputed that the parties entered into an oral agreement to equally split profits and thereafter took significant action to effect that arrangement. Plaintiff testified that he was called from his work on a patient, and, after being told the document was a technicality prepared by defendant's attorney and was needed to complete the partnership agreement, he hastily signed the document and returned to his patient. Defendant testified that he was unable to remember the circumstances surrounding the signing of this agreement although he admitted it had been prepared by his attorney. His action in misrepresenting the nature of the document and the urgent need to sign it appears to be a surreptitious attempt to modify the prior express oral agreement made between plaintiff and himself.

We find that from all the evidence an oral partnership agreement was entered into by the parties on July 18, 1977, and accordingly, the

trial court's decision was against the manifest weight of the evidence. *City of Carbondale v. Grose* (1971), 49 Ill. 2d 367, 273 N.E.2d 832.

For the reasons set forth above, we reverse the judgment of the circuit court and remand this cause for further proceedings.

*Reversed and remanded for further proceedings.*

MEJDA, P.J., and SULLIVAN, J., concur.