**Wallis M. SPENCE, Appellant,**

v.

**James H. TATUM; Whitehall Group,**

**Donna Surges Tatum, Appellee.**

No. 91–1493.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1991.

Decided March 26, 1992.

William F. Sherman, Little Rock, Ark., argued, for appellant.

John L. Sullivan, Chicago, Ill., argued, for appellee.

Before McMILLIAN and JOHN R. GIBSON, Circuit Judges, and HUNTER,* Senior District Judge.

JOHN R. GIBSON, Circuit Judge.

Wallis M. Spence appeals from the district court's[1] entry of a directed verdict for Donna Surges[2] on Spence's claim against Surges and her husband for breach of a loan agreement and fraud. The district court directed the verdict for Surges on the grounds that the evidence would not support a verdict holding Surges liable as a partner in the business that contracted with Spence. The jury returned a verdict in favor of Spence against James Tatum. The only issue in this appeal is whether there was a submissible case that Surges was Tatum's business partner. We affirm.

Wallis Spence invested $63,000 pursuant to a contract with Tatum's loan brokerage firm, "The Whitehall Group," under which the money was to be repaid with interest within 120 days. Spence does not argue that Surges was directly involved in the transactions at issue. He claims only that she is liable as James Tatum's partner. As the only issue before us is the partnership issue, we need not explore the facts of the loan transaction in great detail. Suffice it

to say that Spence never got all his money back.

Whitehall Group had once existed as a Delaware corporation with its principal office in Chicago, Illinois. Surges was that corporation's director and secretary. The "Whitehall Group, Ltd." certificate of authority to do business in Illinois was revoked on March 1, 1986, for failure to file an annual report and pay franchise taxes. Thereafter, James Tatum continued to do business under the "Whitehall Group" name, but there is no claim that the Whitehall Group continued to exist as a corporation or that Tatum held it out as a corporation. Tatum maintained a bank account under the Whitehall Group name with Surges as one of the authorized signatories.

In 1988, long after the corporation's certificate of authority had lapsed, Tatum, acting as the Whitehall Group, negotiated a loan contract with Spence. Tatum took Spence's money to loan it to a manufacturing firm called Associates, Inc.

After Tatum failed to repay the funds as promised, Spence brought this diversity action claiming breach of the agreement, breach of fiduciary duty, and fraud. The case was tried to a jury. At the conclusion of the evidence, the district court directed a verdict for Surges, holding that the evidence would not support a jury finding that Surges was liable as a partner with Tatum.

The standard for granting a directed verdict was stated authoritatively in *Dace v. ACF Industries, Inc.*, 722 F.2d 374, 375–76 (8th Cir.1983), *adhered to as supplemented in Dace v. ACF Industries, Inc.*, 728 F.2d 976 (8th Cir.1984). A directed verdict is only proper when:

> "all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party." ... We have interpreted the instruction to view the evidence favorably

---

\* The Honorable Elmo B. Hunter, Senior United States District Judge for the Western District of Missouri, sitting by designation.

1. The Honorable Garnett Thomas Eisele, Chief Judge for the United States District Court for the Eastern District of Arkansas.

2. Surges is also known by her married name of Donna Surges Tatum.

to the nonmovant as requiring the court to (1) resolve direct factual conflicts in favor of the nonmovant, (2) assume as true all facts supporting the nonmovant which the evidence tended to prove, (3) give the nonmovant the benefit of all reasonable inferences, and (4) deny the motion if the evidence so viewed would allow reasonable jurors to differ as to the conclusions that could be drawn.

*Id.* at 375 (citations omitted). *Accord Nelson v. Production Credit Ass'n,* 930 F.2d 599, 603 (8th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 417, 116 L.Ed.2d 438 (1991) (same standard for judgment notwithstanding verdict); *Robertson Oil Co. v. Phillips Petroleum Co.,* 871 F.2d 1368, 1371 (8th Cir.1989) (j.n.o.v. standard in Arkansas diversity case).

Whether Spence made a submissible case on the partnership issue is a question of law that we review de novo, giving no deference to the ruling of the district court. *Salve Regina College v. Russell,* — U.S. ——, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

Spence makes three arguments to show a prima facie case that Surges was Tatum's partner. First, he relies on several older Arkansas cases for the proposition that when a corporation's certificate of authority to do business is revoked, the corporation's officers become liable as partners for the debts of the corporation: *South Arkansas Grocery Co. v. Lee,* 168 Ark. 599, 271 S.W. 449 (1925); *Bailey v. O'Neal,* 92 Ark. 327, 122 S.W. 503 (1909); *Mississippi Valley Const. Co. v. Chas. T. Abeles & Co.,* 87 Ark. 374, 112 S.W. 894 (1908). This authority is irrelevant because Spence never dealt with the corporation, nor had any reason to believe he was dealing with a corporation. By the time he entered the picture, the Whitehall Group Corporation was defunct and Tatum did not represent to Spence that he was dealing with a corporation. Therefore, it would not avail Spence in any way to hold Surges liable for the debts of the corporation.

■ Second, Spence argues that Surges' use of money from the bank account with the "Whitehall Group" name on it constituted "receipt [by Surges] of the net profits of a business," and is therefore prima facie evidence of partnership under section 7(4) of the Uniform Partnership Act.[3] Spence does not say whether he believes Illinois or Arkansas law governs the issue, but the result would be the same in either case because both states have adopted the Uniform Partnership Act. Ark.Code Ann. §§ 4–42–101 to 615 (Michie 1991 Repl.); Ill. Rev.Stat. ch. 106½, pars. 1–43 (1989).

The facts show that Tatum and Surges used the "Whitehall Group" account as their personal checking account. They maintained no other checking account, and Tatum made no attempt to segregate the business assets from his personal assets. Tatum used the Whitehall account to pay his family bills, and Surges wrote checks on the account to pay personal expenses,

---

**3.** Section 7 of the Uniform Partnership Act provides:

In determining whether a partnership exists, these rules shall apply:

(1) Except as provided by section 16 persons who are not partners as to each other are not partners as to third persons.

(2) Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property.

(3) The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived.

(4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:

(a) As a debt by installments or otherwise,

(b) As wages of an employee or rent to a landlord,

(c) As an annuity to a widow or representative of a deceased partner,

(d) As interest on a loan, though the amount of payment vary with the profits of the business,

(e) As the consideration for the sale of a good-will of a business or other property by installments or otherwise.

The Arkansas version, Ark.Code Ann. § 4–42–202(4) (Michie 1991 Repl.), and the Illinois version, Ill.Rev.Stat. ch. 106½ para. 7 (1989), are substantively the same.

including her hairdressing, maid service and restaurant bills. However, Surges never received formal distributions of a set percentage of Whitehall's profit, and what she did receive seems to be simply a portion of the business' "gross profit." U.P.A. section 7(3) states specifically that this is not enough to establish partnership.

Numerous cases interpreting the Uniform Partnership Act hold that a spouse's sharing money derived from a business with the other spouse does not by itself render the recipient a partner in the business. In *Cooper v. Spencer*, 218 Va. 541, 238 S.E.2d 805 (1977), the court reversed a finding that a husband and wife were partners in a business in which they "shared everything, 'work' and 'profits,' but the sharing was 'jointly,' as 'man and wife.'" 238 S.E.2d at 806. The court stressed that the ultimate inquiry was whether there was an "implied partnership agreement between the parties." *Id.* at 807. The court distinguished between sharing gross returns as a family, which *was not* evidence of partnership, and a "division" of profits, which *would* be evidence of partnership. *Id.* at 806–07.

The same analysis appears in *South Sioux City Star v. Edwards*, 218 Neb. 487, 357 N.W.2d 178 (1984). *Edwards* started with the principle that "the existence of a partnership depends upon the intention of the parties to form such an entity." *Id.* 357 N.W.2d at 180. Sharing profits within a family was not sufficient evidence to support the trial court's finding of partnership:

> The evidence shows only that Mr. Edwards supported his family with money made from operating the store, not that Mrs. Edwards had a direct right to a certain percentage of the store's profits. Such evidence may indicate the existence of a sound marriage, but it certainly does not establish a business partnership.

*Id.* at 180. *Accord Schlichenmayer v. Luithle*, 221 N.W.2d 77, 82–83 (N.D.1974). *But see Connors v. Ryan's Coal Co.*, 923 F.2d 1461, 1466–68 (11th Cir.1991) (deciding partnership existed under federal law).

The reasoning of the Arkansas Supreme Court in *Gammill v. Gammill*, 256 Ark. 671, 510 S.W.2d 66 (1974), assures us that Arkansas law would proceed on the same lines as the cases we have cited, though *Gammill* did find adequate evidence of partnership on the facts of that case. In *Gammill*, there was direct evidence that the husband intended the wife to share ownership in the business, in addition to circumstantial evidence of such an intent, including the wife's working "seven days a week" in the business. *Id.* 510 S.W.2d at 66. The fact that the wife drew funds from the business to pay family expenses received only passing mention. *Id.* at 67. Even with all this evidence, *Gammill* states, "[T]he fact question was very close." *Id.* If *Gammill* was close, we can reasonably infer that the Arkansas courts would not consider Surges' use of the money from the Whitehall Group account to be prima facie evidence of partnership under the Uniform Partnership Act.

Spence's citation of *Zajac v. Harris*, 241 Ark. 737, 410 S.W.2d 593 (1967), is not on point because in *Zajac* the partners were not married and they divided the profits according to a set percentage. *Id.* 410 S.W.2d at 594.

Spence has not cited any authority suggesting Illinois courts would interpret section 7 of the U.P.A. differently than the Arkansas courts would.

■ Finally, Spence argues that all the facts taken together make a submissible case on partnership. In order to prove partnership liability, Spence must establish either that the parties intended to form a partnership, *Zajac*, 410 S.W.2d at 594; *Laroia v. Reuben*, 137 Ill.App.3d 942, 92 Ill.Dec. 685, 688, 485 N.E.2d 496, 499 (1985), or that they are partners by estoppel, Ark.Code Ann. § 4–42–308 (Michie 1991 Repl.); Ill.Rev.Stat. ch. 106½ para. 16 (1989). The scant evidence Spence has adduced would not support a jury verdict on either theory.

Aside from the sharing of profits, Spence points to Surges' activities on behalf of the business and her occasional contribution of her paycheck to the "Whitehall Group"

checking account. Her deposits in the checking account are not significant, since, as we have already discussed, Tatum and Spence used that account as their personal checking account. Surges' services to the business were extremely minor. Her services before 1986 we consider irrelevant, since the business was incorporated between the time of those services and the time of the transaction with Spence.[4] During the relevant time period, Surges did occasional typesetting work for the business on her computer. She also issued some checks for the business when her husband was ill and answered the business telephone, which seems to have been either in the family's apartment or across the hall from it. Finally, she solicited an investment for the business from a colleague at Roosevelt University in 1989.

Taken together, these facts do not rise to the level of a submissible case on the theory either that Surges and Tatum intended to form a partnership or that they represented themselves as such to Spence. We affirm the district court's judgment.

cation; Rosanne Bentley; Dan L. Blackwell; Terry A. Bond; Thomas R. Davis; Susan D. Finke; Raymond McCallister, Jr.; Cynthia B. Thompson; Roger L. Tolliver; Robert E. Bartman; and John F. Allan, Appellees.

No. 91–2417.

United States Court of Appeals, Eighth Circuit.

Submitted March 12, 1992.

Decided March 26, 1992.

---

4. The pre–1986 services include soliciting a colleague at Roosevelt University to give seminars

for the Whitehall Group.