BRANDENBURG v. BRANDENBURG.

5-2523                                           356 S. W. 2d 625

Opinion delivered April 30, 1962.

*M. C. Lewis, Jr.,* and *William R. Mitchell,* for appellant.

*B. W. Thomas* and *Richard W. Hobbs,* for appellee,

JIM JOHNSON, Associate Justice. This case involves an action which, *inter alia,* seeks to establish the existence of a partnership.

William Brandenburg, Sr. and his wife Luella Jane Brandenburg were the adoptive parents of Mrs. Brandenburg's half-brother, appellee William Brandenburg, Jr. These three, for a time, operated a cleaning and pressing business in the City of Hot Springs. Upon the death of Mrs. Brandenburg, appellee brought suit against William Brandenburg, Sr., and Ruby Brandenburg, Executrix of the estate of Luella Jane Brandenburg, asking that the business be declared a partnership and that he be declared a one-third partner; for an accounting; for dissolution and distribution of assets according to the respective ownership interest; and declaration of certain real estate as partnership property. After an extended length of time, the trial court finally resolved the issues in favor of appellee and decreed that a general partnership existed between the parties. In addition, the trial court made extensive findings as to various amounts due appellee from the partnership operation, capital and assets, the total of which resulted in a judgment being rendered in favor of appellee in the amount of $15,673.71. From such decree William Brandenburg, Sr. and Ruth Brandenburg, Executrix, brought this appeal. During the pendency hereof, appellant William Brandenburg, Sr., died and the appeal is continued in his stead by the co-administrator of his estate.

For reversal, appellants urge seven points with numerous sub-points, all of which may be epitomized in two principal points, i. e., (1) That the trial court erred in finding that a partnership existed and (2) that the court erred in failing to appoint a Master to make an accounting.

## I.

### THE EXISTENCE OF A PARTNERSHIP

In the early case of *Culley* v. *Edwards,* 44 Ark. 423, this Court stated the rule that: ". . . the test of a partnership between the parties themselves has always been their actual intent," and the rule is equally well settled in this jurisdiction that the existence of a partner-

ship need be proved only by a preponderance of the evidence. See *Wilson* v. *Todhunter,* 137 Ark. 80, 207 S. W. 221; *Williams* v. *Walker,* 148 Ark. 49, 229 S. W. 28; *May* v. *Sharp,* 193 Ark. 340, 99 S. W. 2d 252.

With these rules in mind, we examine the record on trial *de novo* to determine whether the evidence meets the tests set forth above. There we find that appellee testified on two occasions that it was agreed between William Brandenburg, Sr., and Luella Brandenburg and himself that they would enter into a general partnership with respect to running the Brandenburg Cleaners and on the basis of this agreement appellee advanced certain moneys to be used for partnership purposes and that he worked at various times throughout the partnership in the business and managed the same and did other work in connection therewith and received no salary whatsoever, but a slight drawing account and he lived with his parents, the other two partners, at various times without paying room and board. The question of the partnership agreement was corroborated by two disinterested witnesses. Edward Bibb testified that Brandenburg, Sr. and his wife advised the appellee that if he would put his money that he then had into the business that they would buy some new equipment and call it the Brandenburg Cleaners and all three would be partners.

Clare Elizabeth Shannon testified that Brandenburg, Sr. and his wife told her that they, along with the appellee, were the three partners and she had heard them state this quite a number of times and that they told her that they were partners "three ways." It is evident from the record that both of the foregoing named witnesses were in a position to know what the agreement was because of the fact that Edward Bibb stated that he was Mrs. Brandenburg's nephew; had worked in the cleaners taking care of the business for a short period of time and had helped install some of the new equipment and machinery and that he visited in the Brandenburg home quite often and went on fishing trips with them and was more or less in constant contact with all three parties.

Clare Shannon resided at 131 Central Avenue and the business establishment was located at 125 Central Avenue and she stated that she had lived with Brandenburg, Sr. and his wife for approximately nine months and she also had helped manage the business at one time and was in more or less constant contact with all three parties, and, therefore, was in a position to know the business relationship.

In addition to the evidence of appellee and these two disinterested witnesses, the record further reveals that William Brandenburg, Sr., himself, admitted that there was an agreement made between the parties as to a partnership business under which appellee was to receive one-third of the net profits. See Ark. Stats. § 65-107(4). Since the Chancellor had an opportunity to hear and observe the witnesses on the stand, great weight should be accorded his finding of fact. *England* v. *Scott,* 205 Ark. 47, 166 S. W. 2d 1014; *May* v. *Alsobrook,* 221 Ark. 293, 253 S. W. 2d 29. It follows, therefore, from what has been said and from other evidence brought forth in the voluminous record before us that we cannot say the Chancellor erred in finding that appellee had established by a preponderance of the evidence that it was the actual intent of the parties to establish a partnership.

## II.

## MASTER AND ACCOUNTING

It is conceded by all parties that this case was to be tried first on the sole question of whether a partnership existed. There are various places in the record where attorneys for appellants were attempting to bring out testimony regarding money matters, and counsel for the appellee objected, stating that what the question referred to was in the matter of accounting.

"Mr. Thomas: If the Court Please, that would be a matter of accounting.

"The Court: Yes that would be the matter of accounting.

"Mr. Thomas: If the Court please, that's still going into accounting.

"The Court: I think you're burdening the record here now."

\* \* \*

"Mr. Thomas: Now, if the Court please, that's in the accounting, I don't see where that's a basis here at all. I don't object to the boy answering.

"The Court: I think that's a matter of accounting, what the profits were."

\* \* \*

"Mr. Hobbs: Now, if the Court please, I think we've agreed to it three times that the question before the Court at this time is whether this is a general or limited partnership. The question of all this money should be referred to a Master.

"The Court: Granted."

\* \* \*

"Mr. Thomas: If the Court please, I'm going to object to all this line of questioning, it's just taking up the Court's time, everybody's time, encumbering the record, on something that's not even before the Court; it having been stipulated before the trial that the only question that would be presented to the Court was the general or limited partnership.

"The Court: Let's try to narrow it down."

From these quotations of objections made by counsel it is apparent that counsel and the Court during the trial agreed that if the court found that there was a partnership, then there would have to be either an accounting by the Court or by a Master. It is also evident from the record of trial that no accounting either by the Chancellor or by a Master was taken to strike an account or balance between the parties as a result of the Court's finding of a one-third partnership.

In the course of the trial to determine the existence or nonexistence of a partnership, it became necessary for an abundance of testimony to be introduced relative to

the handling of money and the financial affairs of the business. It was from these figures that the Chancellor made his findings and disposed of the entire case. Clearly, this was error. In fact appellee concedes on appeal that there was at least one error in the Court's calculations in his favor which was in excess of $1,000. This partnership existed from July 1946 through October 31, 1954, not just a period of months but of years. An accounting will be complicated. It is evident from the record that there are many account books, tax records and other material available which will enable a Master to strike an equitable balance between the parties. As was said many years ago by this Court in *Bryan* v. *Morgan*, 35 Ark. 115,

"The Chancellor may himself state an account and announce the result, and decree accordingly. But this practice should be confined to simple and obvious cases in order to save the expense to litigants. In complicated transactions justice cannot be well done without a reference."

and in *Excelsior White Lime Co.* v. *Rieff*, 107 Ark. 554, 155 S. W. 921, this Court stated the rule we apply here:

"Where numerous items are in dispute, and it is necessary to determine item by item to strike a balance between the parties, the Court should refer the matter to a Master to state the account."

Reversed in part and remanded with directions to appoint a Master to state an account between the parties and for further proceedings consistent with this opinion.