Lewis Hunter GAMMILL, Adm'r. *v.*
Mary Ross GAMMILL

74-31                 .          510 S.W. 2d 66

Opinion delivered June 3, 1974

*Bridges, Young, Matthews & Davis,* for appellant.

*Cearley and Gitchel,* for appellee.

LYLE BROWN, Justice. This is a dispute over the ownership of four grocery stores. Lewis Hunter Gammill, administrator of the estate of Lewis Gammill, sought permission of the probate court to sell the stores, treating them as assets of the estate of the intestate. Appellee Mary Ross Gammill, widow of the deceased, filed a response contending the grocery stores were not the property of the estate but were owned by the decedent and Mary Ross Gammill as tenants by the entirety. Alternatively, Mrs. Gammill alleged the stores were operated as a partnership business by the husband and wife. The trial court found the status of a partnership had been established. A single point is advanced for reversal: "The evidence was insufficient for the court to find that Lewis H. Gammill and Mary Gammill operated the four grocery stores in question as a partnership prior to the death of Lewis H. Gammill."

The evidence showed that Lewis H. Gammill bought a small grocery store in 1970. It was purchased with funds Gammill had received from a retirement plan with a former employer, together with a loan for the balance. From that time until his death in March 1973 Mr. and Mrs. Gammill worked seven days a week. They eventually acquired a total of six stores. The other five were bought at different times with profits and borrowed money. Two of the stores were sold prior to Mr. Gammill's death.

Mrs. Gammill's contribution to the success of the venture is not disputed. Aside from taking time off to give birth to the youngest child, she spent full time in the stores. She was a supervisor, bill-payer, purchasing agent, clerk, cashier, "everything but meat cutter". Neither of the parties drew a salary. Mrs. Gammill would regularly draw funds from the venture and place them in a personal account with which to pay living expenses.

The present dilemma arises from the fact that the business of the stores was conducted at various times in the names of a sole proprietor, a partnership, and a corporation. The use of those various titles of ownership would sometimes overlap. However, in 1972 and 1973 there were a number of documentary transactions in which the designation of either a corporation or a partnership was made. However, there were a few transactions in the same category in 1970 and 1971.

The first time a partnership designation appears in the record was in 1970. It covered the property on which was located the Wakefield Store and the lease was in the name of Lewis Gammill and Mary E. Gammill. In 1971 the couple executed a note and security agreement to Union National Bank. Those instruments were signed by both persons under the title "d/b/a Wakefield Grocery, Hilaro Road Grocery, West Heights Grocery, and Bud's Food Store". In February 1972, another note was executed to the same bank and was signed by both parties "d/b/a Wakefield Grocery, Hilaro Road Grocery, West Heights Grocery, Bud's Food Store, and Total Food Store No. 5". On the same date there was a certificate of deposit issued by one of the Little Rock banks showing the depositor to be Total Food Store and was

stamped "partnership". A bank account in the name of Bud's Food Store was carried in the names of Mr. and Mrs. Gammill "d/b/a Bud's Food Store". In February 1972 a note and security agreement in favor of a local bank was executed by Lewis Gammill and Mary Gammill "d/b/a Lewis Gammill Food Stores". That was followed by another bank note executed in March 1972 in the same manner. On May 22, 1972, Mr. Gammill executed what purported to be an amendment to articles of incorporation on file in the Secretary of State's office. That instrument listed the name of the entire operation as Total Food Stores, Inc. It showed twenty shares of stock, ten of which were purportedly owned by Lewis Gammill and the other ten by Mrs. Gammill. However, it was later determined that the articles of incorporation were not in proper legal form. However, it is significant that the purported amendment was signed by Lewis Gammill. On Jan. 6, 1973, a note was executed by Mr. Gammill to a local bank in the name of Total Food Stores, Inc.

The certified public accountant, who worked for the enterprises all during the period described, testified. After May 1972 when Mr. Gammill attempted to amend the articles of incorporation, the CPA kept the records for all the enterprises in the name of Total Food Stores, Inc. It was his intention to file corporate tax returns for the fiscal year ending March 31, 1973; however, Mr. Gammill died March 8, 1973, and shortly thereafter the accountant was advised that the corporation papers were not in proper form.

In view of the many transactions we have described we are unable to say the conclusion of the chancellor that a partnership existed is clearly against the preponderance of the evidence. However, we conclude without hesitation that the fact question was very close, in fact fairly well evenly balanced. When the evidence is so balanced we sustain the chancellor. *Welch* v. *Farber,* 188 Ark. 693, 67 S.W. 2d 588 (1934).

The balancing evidence to which we refer and which has been given careful consideration consists principally of these factors: Many instruments, particularly in 1970 and 1971, were executed in the name of a sole proprietorship; income tax returns showed the venture to be a sole proprietorship;

the truck title was in the name of Lewis Gammill, as were several bank accounts; many purchase orders were in the name of Lewis Gammill; the initial store was bought with the husband's individual funds; the two grocery stores which were sold showed Lewis Gammill as grantor; and in March or April 1973, after the death of her husband, appellee submitted a written offer to purchase two of the stores, which act was inconsistent with ownership.

Appellant contends that an analysis of the evidence shows that appellee failed to sustain a finding that even one of the necessary elements of partnership were established. We are cited to Ark. Stat. Ann. § 65-107 (Repl. 1966). That section is a part of the Uniform Partnership Act and sets forth certain rules to apply in determining whether a partnership exists. We find those rules to be of little help in the case before us. As is conceded by appellant the checklist afforded by that section is "possibly most helpful if used to determine what is not an element of a partnership rather than what elements are required to be present". Basically our case law furnishes the guidelines for determining whether in law a partnership exists. In fact appellant frankly and correctly states that the primary test of a partnership between the parties is their actual intent to form and operate a partnership. *Brandenburg* v. *Brandenburg,* 234 Ark. 1117, 356 S.W. 2d 625 (1962), citing the early case of *Culley* v. *Edwards,* 44 Ark. 423 (1884). To avoid repetition we shall not repeat the various activities and transactions which the chancellor concluded showed it was the intent of the husband and wife to have a partnership. We think the strongest single indication by Lewis Gammill was the execution over his signature to the attempted amendment to an illegal corporation wherein he definitely expressed an intention the ownership of the four stores was to be shared equally between the two parties. When that factor is coupled with the many "d/b/a" documents executed by the parties, we conclude that the chancellor should be affirmed.

Affirmed.