Lena Tamburo PURSER *v.* Kelsey J. KERR, Administrator of the Estate of Grover C. KERR, Deceased

CA 87-80 730 S.W.2d 917

Court of Appeals of Arkansas
Division I
Opinion delivered June 17, 1987

*Daggett, Van Dover, Donovan & Cahoon*, by: *Jimason J. Daggett*, for appellant.

*David* ᴏᴄ 'ᴏmon, for appellee.

JAMES R. COOPER, Judge. The appellant, Lena Tamburo Purser, filed suit in chancery court against the estate of Grover C. Kerr alleging that she was entitled to one half of the estate, because of her services rendered and because of an alleged contract to make a will. She also filed a claim in probate court alleging entitlement to one half of the estate because she and Mr. Kerr allegedly were partners. The probate and chancery cases were consolidated for trial.

The trial judge found that she was not entitled to any of the estate of Mr. Kerr on any of the theories advanced. On appeal, the appellant argues that the trial court erred in finding that the evidence was insufficient to establish a contract to make a will; in finding that the evidence was insufficient to establish a partnership; and in finding that the evidence was insufficient to support an award based on unjust enrichment, implied contract, or quantum meruit. We hold that the trial court was correct in his findings and we affirm.

The appellant was widowed in 1950. In 1952 she met Mr. Kerr, and he resided with the appellant and her mother until her mother's death. In 1973, Mr. Kerr built a home in which they resided together. They continued to live together until 1983. At that time, they had a misunderstanding about who was to pay certain income taxes. Although the appellant had moved into a separate house, the parties remained friendly until Mr. Kerr died on March 8, 1986.

During the entire time the parties lived together, and after their separation, they worked together in a business owned by Mr. Kerr. The appellant testified that they lived as man and wife, that

she cooked and cleaned for Mr. Kerr even after the separation, that he paid most of the expenses, and that they worked together to build the business. The appellant stated that Mr. Kerr had promised that she would be taken care of if anything happened to him, and that Mr. Kerr promised her half of his estate. Mr. Kerr died intestate.

The appellant first argues that there was sufficient evidence from which the chancellor could find that Mr. Kerr had made an oral contract to make a will naming her as a beneficiary. The appellant argues that she performed her part of the contract by acting as a wife to Mr. Kerr and working in his business without pay, and that Mr. Kerr breached the contract when he died intestate.

In chancery cases we review the record *de novo*, but will not disturb the findings of the court unless clearly erroneous or against the preponderance of the evidence. *Fletcher* v. *Long*, 271 Ark. 942, 611 S.W.2d 779 (1981). In order to prove an oral contract to make a will, the evidence must be clear, cogent and convincing. *Apple* v. *Cooper*, 263 Ark. 467, 565 S.W.2d 436 (1978). The decision of the chancellor is necessarily based on the credibility of the witnesses, and we have said many times that the chancellor is in a better position to judge credibility than we are. *Apple, supra.*

The appellant testified extensively as to what her living arrangement had been with Mr. Kerr, and that Mr. Kerr had told her that he would provide for her. However, the only indication that Mr. Kerr had any intent to provide for the appellant after his death is found in receipts for certificates of deposit which were payable on death to the appellant, but which had been changed to remove the appellant's name. According to the appellant, her name was removed from the certificates after their argument. The appellant further testified that the certificates had been purchased with both of their funds and that they had "split" them in 1983.

Several friends testified as to the living arrangement between Mr. Kerr and the appellant. Again, however, none of them was able to say that Mr. Kerr had expressly promised to make a will. One friend did testify that Mr. Kerr had told him he did not want his children to inherit, but that statement does not give rise

to a presumption that Mr. Kerr intended the appellant to inherit.

The evidence will not support a finding that Mr. Kerr entered into an agreement with the appellant to make a will, what the terms of the agreement were, or that the appellant had performed her part of the bargain. We agree with the trial judge that no express contract was negotiated between the parties.

The appellant next argues that the trial court erred in finding that the evidence was insufficient to establish a partnership. We disagree.

When Mr. Kerr first met the appellant he was working in an auto parts business in Memphis, Tennessee. After Mr. Kerr moved to Helena, Arkansas, the appellant loaned him one hundred and fifty dollars to open his own business. The appellant worked in the Helena auto parts business and in a second auto parts store later. Eventually, an antique store was opened. It is undisputed that the appellant worked in all of the businesses, and she testified that she worked in the businesses for thirty-four years without any pay. At one point she testified that when items were bought for the business she bought "half and he bought half"; however, she later testified that Mr. Kerr handled all of the money and that he paid for the items. Various friends also testified that they frequently saw the appellant working in the business, that she helped to make decisions as to what was purchased, and that when referring to the business Mr. Kerr would use the words "we" or "Lena and I."

The primary test of a partnership between parties is their actual intent to form a partnership. *Gammill* v. *Gammill*, 256 Ark. 671, 510 S.W.2d 66 (1974); *Brandenburg* v. *Brandenburg*, 234 Ark. 1117, 356 S.W.2d 625 (1962). On the evidence presented in the case at bar, we simply cannot say that the trial judge erred in failing to find a partnership. Although they had a joint checking account, that was changed in 1983. None of the other property was owned jointly, and it is clear that after the appellant's initial one hundred and fifty dollar investment, all of her funds were kept separate and apart from Mr. Kerr's. Furthermore, even if a partnership had existed, it is clear that it was ended in 1983. After their argument regarding income taxes, all of their funds were divided. At one point, the appellant referred to this period of time as when "we dissolved the

partnership."

█ Finally, the appellant argues that she should have recovered from the estate for the thirty-four years she worked without pay, based on the equitable principles of unjust enrichment, implied contract or quantum meruit. However, all of these remedies are founded on an implied agreement to give reasonable value for services performed and the principle that it would be unjust to allow the party receiving the services to accept them without paying for them. *See Frigillana* v. *Frigillana*, 266 Ark. 296, 584 S.W.2d 30 (1979); *Davis* v. *Hare*, 262 Ark. 818, 561 S.W.2d 321 (1978); *Whitley* v. *Irwin*, 250 Ark. 543, 465 S.W.2d 906 (1971).

In the case at bar it is clear that the appellant received consideration for her services. The appellant stated that Mr. Kerr would not allow her to spend her money, and that he invested and managed it for her. She lived in homes provided by Mr. Kerr and, as a result, was able to save and invest the monthly widow's pension she received after her first husband's death. While the appellant was working in the business for the past thirty-four years, Mr. Kerr, in return, provided for her and saw that she was taken care of. Furthermore, by the appellant's own admission, when they separated in 1983 she received a share of the certificates of deposit they had purchased with monies generated by the businesses.

Affirmed.

CORBIN, C.J., and CRACRAFT, J., agree.