Alfred W. BOECKMANN *v.* Harlon Chris MITCHELL

94-1024                                    909 S.W.2d 308

Supreme Court of Arkansas
Opinion delivered October 30, 1995

*Davis & Watson, P.A.*, by: *Charles E. Davis*, for appellant.

*Preston G. Hickey*, for appellee.

BRADLEY D. JESSON, Chief Justice. The appellant, Alfred W. Boeckmann, appeals from a decree of the Cross County Chancery Court, in which the chancellor declared that an equal partner-

ship existed between the parties for the operation of a tire business, and appointed a receiver. His sole point on appeal is that the evidence presented below was insufficient to support the chancellor's finding that a partnership existed. The Court of Appeals certified the case to this court pursuant to ARAP 2(a)(7), which allows for an appeal from "an interlocutory order appointing a receiver," and Ark. Sup. Ct. R. 1-2(a)(12), which provides that this court has jurisdiction of interlocutory appeals permitted by ARAP 2. We affirm and remand.

### *Facts*

On April 20, 1993, appellee Harlon Chris Mitchell filed a complaint in Cross County Chancery Court. In the complaint, he alleged that sometime prior to September 11, 1992, he and the appellant, Alfred W. Boeckmann, had entered into a verbal agreement whereby both parties would be equal partners in the ownership and management of Town & Country Tire & Auto, a tire business located in Wynne, Arkansas. According to Mitchell, as a part of this agreement, he and Boeckmann restructured the principal loan on the business by executing a note on September 11. Mitchell further alleged that he and Boeckmann agreed that they would have equal access to the business checking account, and that he was added as a signatory to the existing account. The two operated under this agreement for approximately six months until Boeckmann, without any advance notice, shut down the business, closed out the checking account, and had Mitchell removed from the premises by police.

In his complaint, Mitchell asked that the chancellor declare that a partnership existed and appoint a receiver to take immediate control of the business and for an accounting. In Boeckmann's answer, he denied the existence of a partnership. According to Boeckmann, he placed Mitchell's name on the note to help him establish a line of credit and put his name on the checking account to allow Mitchell to pay bills in his absence.

The chancellor conducted a hearing on May 12, 1993. Mitchell testified that in September of 1992, he was working on a farm with Boeckmann's relatives when he learned of Boeckmann's desire to sell his tire business. According to Mitchell, Boeckmann told him he would sell the business for $25,000.00. While Mitchell tried to get profit and loss statements from Boeck-

mann, all he could obtain was a profit and loss tax form, which he took to Cross County Bank. The bank denied the loan. Mitchell claimed the denial was due to Boeckmann's failure to supply him the necessary financial documentation, while Boeckmann claimed the loan was denied because of Mitchell's bad credit. It was Mitchell's testimony that after the bank denied the loan, he and Boeckmann verbally agreed to an equal partnership arrangement. The two men then restructured the outstanding business loan. A fixed rate commercial promissory note was offered into evidence, indicating that the note was executed by Town & Country Tire & Auto as borrower, and Alfred W. Boeckmann and Harlon Chris Mitchell each as "owner." Also admitted into evidence was a business checking account card listing Boeckmann as owner, and Mitchell and Carolyn Carter, secretary of the business, as authorized signatures.

According to Mitchell, at Boeckmann's request for his tax purposes, no written partnership agreement was to be executed until the end of the year. In the meantime, Mitchell was to learn the tire business. Between September 1992 and April 1993, both parties worked at the business. During this period, Mitchell drew $250.00 per week and would write his own checks, while Boeckmann drew $160.00 per week, plus payment of medical insurance, truck insurance, personal taxes, and a gas allowance, the total of which was approximately $250.00 per week.

Problems developed between Mitchell and Boeckmann in February of 1993. Mitchell refused to sign a written agreement regarding the business relationship, claiming that it was not the original agreement. Soon thereafter, Boeckmann, without Mitchell's knowledge, paid off the bank note and had Mitchell's name removed from the signature card. When Mitchell refused to leave the premises of the business, Boeckmann called police.

Rick Phillips, an employee of Cross County Bank, testified that, by signing the September 11 promissory note, Boeckmann and Mitchell became jointly and severally liable for the total amount of the loan, or $18,508.62. Boeckmann's home was listed as the security on the note.

Boeckmann testified that no partnership arrangement ever existed. According to Boeckmann, he agreed to sell one half of the business's inventory to Mitchell for $15,000.00, but that the

agreement fell through when Mitchell could not obtain the loan. He stated that he thought it would help Mitchell's credit if he put Mitchell's name on the note. It was Boeckmann's position that Mitchell was an employee, and that he paid Mitchell a $250.00 weekly salary, as well as worker's compensation, hospital insurance, and social security. Boeckmann agreed that there was some discussion regarding Mitchell purchasing a 10 percent partnership interest, but that there was never any discussion regarding an equal partnership interest. Boeckmann's testimony was corroborated by his brother, attorney Joe Boeckmann.

On June 1, the chancellor issued a letter opinion indicating that, while the evidence was close, Mitchell had proved by a preponderance of the evidence that a partnership had been formed between the parties. In making this determination, the chancellor gave due consideration to the bank official, Rick Phillips, and the documentary evidence presented. The chancellor granted Mitchell's request for an accounting, and requested briefs on the issue of whether it was necessary to appoint a receiver. On July 8, a temporary decree was filed, incorporating the chancellor's letter opinion. In a letter brief submitted by Boeckmann on July 23, he objected to the appointment of a receiver. On February 9, 1994, the chancellor entered a supplemental decree, stating that a partnership existed, and appointing Jim Luker as receiver. In this decree, Luker was vested with authority to require either party to make available to him any documents pertaining to the business, including financial or bank statements. Boeckmann filed a notice of appeal on March 10.

### Appellate court jurisdiction

The record does not show that an accounting has been completed. In fact, it indicates that Mitchell has filed two petitions for contempt since the decree at issue was entered. In these petitions, Mitchell complains that Boeckmann has not cooperated with the receiver in providing the necessary documents. The chancellor scheduled hearings on these petitions. In a subsequent decree, the chancellor appointed an accountant to perform a complete accounting of the partnership, and set the case for review. Thus, the order from which Boeckmann appeals is not a final judgment. Arkansas Rule of Appellate Procedure 2(a)(7) provides for an appeal from "an interlocutory order appointing

a receiver." Prior to the adoption of this rule, orders appointing receivers were appealable pursuant to statute. *See* Ark. Stat. Ann. § 27-2102 (Repl. 1979). Rule 2(a)(7) superseded this statute. *In the Matter of Statutes Deemed Superseded by the Arkansas Rules of Appellate Procedure*, 290 Ark. 616, 717 S.W.2d 491 (1986).

While the order from which Boeckmann appeals includes the appointment of Jim Luker as receiver, he does not specifically challenge this appointment. Instead, Boeckmann claims that the chancellor erred in her underlying ruling that an equal partnership existed.

██ Arkansas Rule of Civil Procedure 66 provides that courts of equity "may appoint receivers for any lawful purpose when such appointment shall be deemed necessary and proper." We have observed that the appointment of receivers is ordinarily exercised "in conjunction with a pending proceeding, and rarely as a means in itself, but whenever unusual circumstances warrant." *Chapin* v. *Stuckey*, 286 Ark. 359, 692 S.W.2d 609 (1985). Stated another way, receivership is ancillary to some proceeding over which the court has jurisdiction. *Id.* at 362. In *Chapin*, we discussed the inherent discretion of chancellors to appoint receivers, while recognizing that this power should be exercised with restraint and caution:

> The power to appoint a receiver is, of course, a harsh and dangerous one. *Kory* v. *Less*, 180 Ark. 342, 22 S.W.2d 25 (1929). 'The cases in which receivers ordinarily will be appointed are confined to those in which it can be established to the satisfaction of a court that the appointment of a receiver is necessary to save the property from injury or threatened loss or destruction, or that the claimants in possession are excluding another party from rights which the latter has in the land.' *Saylor* v. *Hilton*, 190 Ky. 200, 226 S.W.2d 1067 (1921).

286 Ark. at 364. The appointment of a receiver is a significant step and can affect the substantial rights of the parties. It follows that review of the propriety of such an appointment be immediately available. This protection is provided by permitting interlocutory appeals of such orders. In reviewing these interlocutory appeals, it is necessary to include a review of the underlying issues which form the basis for the appointment of the

receiver. We have similarly interpreted ARAP 2(a)(4), which provides for an appeal from "[a]n order which strikes out an answer, or any part of an answer," to include this court's review and ruling "on all issues dependent upon the stricken answer." *Arnold & Arnold v. Williams*, 315 Ark. 632, 870 S.W.2d 365, *cert. denied*, 115 S.Ct. 489 (1994); *Arnold Fireworks Display Inc. v. Schmidt*, 307 Ark. 316, 820 S.W.2d 444 (1991). Thus, we will address the issue of whether the chancellor erred in determining that an equal partnership existed.

## *Existence of partnership*

■■ The Uniform Partnership Act is codified at Ark. Code Ann. § 4-42-101 et. seq. (Repl. 1994). A partnership is defined as "an association of two or more persons to carry on as co-owners a business for profit." § 4-42-201(1). However, as we recognized in *Zajac v. Harris*, 241 Ark. 737, 410 S.W.2d 593 (1967), the term "partnership" is not easily elucidated:

> The business association that is known in the law as partnership is not one that can be defined with precision. To the contrary, a partnership is a contractual relationship that may vary, in form and substance, in an almost infinite variety of ways.

241 Ark. at 738. Thus, we have said that the primary test of a partnership between the parties is their actual intent to form and operate a partnership. *Gammill v. Gammill*, 256 Ark. 671, 510 S.W.2d 66 (1974); *Brandenburg v. Brandenburg*, 234 Ark. 1117, 356 S.W.2d 625 (1962). *See also Purser v. Kerr*, 21 Ark. App. 233, 730 S.W.2d 917 (1987). The existence of a partnership need be proved only by a preponderance of the evidence. *Brandenburg v. Brandenburg, supra.* In his brief, Mitchell asserts that we must determine whether there was substantial evidence to support the chancellor's findings. This is not the correct standard of review. We review chancery cases *de novo*, and will reverse only if the chancellor's findings of fact are clearly erroneous. *Sunbelt Exploration Co. v. Stephens*, 320 Ark. 298, 896 S.W.2d 867 (1995); *Hercules, Inc. v. Pledger*, 319 Ark. 702, 894 S.W.2d 576 (1995).

The facts before us are distinguishable from those in *Morrow v. McCaa Chevrolet Co.*, 231 Ark. 497, 330 S.W.2d 722

(1960), which Boeckmann cites in his brief. In *Morrow*, the appellant sought to establish that a partnership existed, yet admitted that an employer/employee relationship existed between himself and the appellee. Morrow also testified that he considered himself to be a sharecropper rather than a partner. His position was simply that because he received half of the profits from the business, he should have been declared a partner. We rejected appellant's argument on the well-established principle that the sharing of profits alone does not make one a partner. 231 Ark. at 500. In the case before us, there was more evidence offered than the mere sharing of profits, and Mitchell denied that an employer/employee relationship existed.

While Boeckmann offered testimony that no partnership agreement was ever made and that he put Mitchell's name on the loan to help his credit, the chancellor, who was in the best position to determine the credibility of the witnesses, evidently concluded that Mitchell was the more credible witness. In making her ruling, the chancellor specifically referred to the documentary evidence and to the testimony of the banker, Rick Phillips. In light of this evidence, we cannot conclude that the chancellor's findings were clearly erroneous.

Affirmed and remanded.