Juanita BAILES, Individually and as Administratrix
of the Estate of Fred O. BAILES, Sr.,
Deceased, et al *v.* Fred O. BAILES Jr.

76-228                                    549 S.W. 2d 69

Opinion delivered April 4, 1977
(In Banc)
[Rehearing denied April 4, 1977.]

*Gean, Gean & Gean,* for appellants and cross-appellees.

*Warner & Smith,* by: *Wayne Harris* and *G. Allen Wooten,* for appellee and cross-appellant.

ELSIJANE T. ROY, Justice. Appellant Juanita Bailes and Fred O. Bailes, Sr. were married in 1953. They began operation of a business, Bailes Best-Made Dog Food, in Fort Smith, in 1958, and continued such operation until Bailes died intestate on October 31, 1969. Surviving him were Juanita, his wife, and an only son, Fred O. Bailes, Jr., by a previous marriage. After the death of Fred O. Bailes, Sr., Mrs. Bailes incorporated the business and continued its operation under the name Bailes Best-Made Dog Food, Inc.[1]

This action was instituted by appellee Fred O. Bailes, Jr., claiming that all the assets of the business should become part of the estate of his father and should be distributed according to the law of descent and distribution.

The chancellor held that although there was no written partnership agreement the evidence supported a finding that the business was operated as a partnership on an equal basis and 50% of its assets should be included as part of the estate of Fred O. Bailes, Sr. Thereafter the court ordered that an accounting of said partnership be filed, showing all assets of the business as of October 31, 1969, the date of death of Fred O. Bailes, Sr. Juanita Bailes and the other appellants gave their notice of appeal from this decree.

This Court dismissed the appeal because a final order or decree of the chancery court had not been entered. On remand the chancellor appointed a master who, on the basis of additional evidence, submitted a detailed report to the court.

---

[1]The stock was held by Mrs. Bailes, her daughter Susan and the daughter's husband, C.A. White, all of whom are appellants in this action.

In accordance with the report, based upon an equal division of the assets, the court ordered appellants to pay the sum of $114,482.14 to the estate of Fred O. Bailes, Sr., deceased. From this order appellants have appealed.

Appellee cross-appealed alleging that he is entitled to 80% of the assets of said business and appellant Juanita Bailes should receive 20% of said assets in accordance with the division of profits reflected by the tax returns.

The master and the chancellor found no merit in this contention. Mrs. Bailes testified the returns reflected the division of income in this manner for social security purposes only and the division was not a reflection of the interest of each in the partnership.

On appeal there is no allegation that the business was not a partnership, so we will discuss the issues in that light. Appellee contends the provisions of the Uniform Partnership Act, Ark. Stat. Ann. §§ 65-101 et seq. (Repl. 1966), mandate his father's estate's entitlement to an amount equal to the value of decedent's interest in the partnership at the time of his father's death. We do not agree with appellee's interpretation of the Uniform Act.

In *Alexander* v. *Sims, Executor*, 220 Ark. 643, 249 S.W. 2d 832 (1952), we recognized the validity of an agreement between business partners which provided that the interest of the deceased partner would pass to the survivor. Although the agreement considered in *Alexander* was invalidated because of fraud in its procurement, the Court stated:

> Absent any question of consideration, testamentary nature, or fraud on a partner or his creditors, spouse, heirs, etc., some courts have upheld a partnership agreement in which each partner agrees that the survivor will receive all of the assets of the partnership, [cases cited] but such an agreement is always subjected to the closest scrutiny to see if the utmost good faith was observed.

The Uniform Partnership Act does not require the initial partnership agreement be written and neither can we find any provision requiring an agreement which disposes of the

assets upon the death of a partner be in writing.

In 68 C.J.S. Partnership § 294(a), the following comment is made:

> It is entirely competent for partners to provide, in their articles or agreement of copartnership, that the death of a partner shall not dissolve the firm, and that, in such event, the partnership business shall, or may, be continued by the surviving partner or partners, either as sole proprietors of the business. . . . (Or continued on some other basis as indicated therein.)

> It is not necessary that agreements such as have been mentioned should be contained in the original articles of partnership; a separate agreement with respect to such matters is valid and binding even though it be in parol . . . .

In *Gammill* v. *Gammill*, 256 Ark. 671, 510 S.W. 2d 66 (1974), another case involving a partnership, the Court emphasized the importance of the "actual intent" of the parties in determining the business relationship between them.

In *Hogan* v. *Hogan*, 234 Ark. 383, 352 S.W. 2d 184 (1961), this Court stated:

> . . . partners can agree that certain matters can be handled in a different manner than that provided under the Uniform Partnership Act in the absence of other partners or creditors, a chancery court, in dividing property between man and wife in a divorce proceeding, may proceed in a different manner than provided in the Partnership Act. * * *

Since there are no other partners, no creditors, no partnership obligation, we must look to the action of the parties to determine whether their intention (actual or implied agreement) was that the survivor would take title to the partnership assets. Both the oral testimony and the written documents support such an agreement. In fact there is very little evidence to the contrary.

During the course of operation of the business from 1958 until October 31, 1969, the following items of property, listed on the partnership books, were considered assets of the business and title to them was held as follows:

(1) A tract of real property described as Lots 357, 358, 360 and 361 in Thibaut Place, an Addition to the City of Fort Smith. The title to this property was placed in the name of "Fred Bailes and Juanita Bailes, husband and wife, as tenants by the entirety," by virtue of a Warranty Deed dated March 31, 1964.

(2) A savings certificate, dated May 8, 1967, given by the First Federal Savings and Loan Association of Fort Smith in the amount of $36,000, and issued in the names of "Fred Bailes or Mrs. Juanita Bailes, as joint tenants with right of survivorship, and not as tenants in common."

(3) A savings account dated July 28, 1965, being Account No. 128827, issued by the First Federal Savings and Loan Association of Fort Smith to "Fred Bailes or Juanita Bailes, as joint tenant with right of survivorship, and not as tenants in common," and further entitled "Special Account," and which reflected a deposit of $2,290.77 as of the date of death of Fred O. Bailes, Sr. This account was marked "Rent Account" and a separate ledger on the books of the partnership reflected rent that was received from the real property described in (1) above.

(4) A savings account, No. 26939, issued by the First Federal Savings and Loan Association of Fort Smith in the names of "Fred Bailes or Mrs. Juanita Bailes" and which was in existence on the date of death of Mr. Bailes and which had a deposit therein of $4,686.95.

(5) Two checking accounts with the First National Bank of Fort Smith, Arkansas, one in the names of "Mr. or Mrs. Fred Bailes, Special Account," being Account No. 036-14-2. The second, a checking account with the First National Bank of Fort Smith in the name of "Bailes Best-Made Dog Food Company," being Account No.

13612-6.

The above assets reflect that title to the real property was taken in the names of the parties as "tenants by the entirety;" two savings accounts were registered in both names "as joint tenants with right of survivorship, and not as tenants in common;" as to the two checking accounts the vice president of the bank testified that both parties drew on both accounts and the bank regarded them as survivorship accounts.

In addition to the intention of survivorship rights being clearly expressed by the deed, savings and checking accounts, the undisputed testimony of four witnesses reflects this was the manifest intention of Fred and Juanita. The witnesses were Mrs. Marie Whorrall, who, with her husband, prepared the income tax returns of the partnership from 1958 to 1967; Buck Brown, who had known the decedent for thirty years; Mrs. Lena Sanderford, mother of the deceased; and Juanita Bailes, appellant. Each of them testified that upon several occasions Bailes had stated that his wife was to have the business on his death.

Mrs. Whorrall testified:

Q. Did you ever have occasion to hear Fred Bailes give any information during your course in contacting him in regard to your accounting and your bookkeeping and your tax return preparation — tell you as to the condition of the business or what would happen to the business upon his death?

A. Yes.

Q. What was that?

* * *

A. Well, Mr. Bailes would come over to see us when we lived here, and he and Mr. Whorrall and I would discuss his business and the operation and he said many times that he wanted Juanita to have the business if anything should happen to him because she had helped

this up, she was the business head and she was a wonderful — she caught on to this operation and was very valuable to this business.

Mrs. Sanderford, who was appellee's grandmother, testified concerning a conversation she had with her son, the decedent, the last time he visited her at her home.

Q. Did he ever express to you his intent as to what would be done with the business after his death?

A. He did.

Q. What was that, that he expressed to you?

* * *

A. Well, the last time Fred was home, he came in the kitchen where I was at and talked to me about it. And he said that they had had an opportunity to sell the business, but said Juanita wants the business and I said, "Now, Juanita you can take care of the business all right, do you want it, and she says yes, I do," and he said, "well, it's yours."

A further statement as to the intention of the parties is found in Mrs. Bailes' testimony:

Q. Mrs. Bailes, Mr. Harris has asked you about the ownership of the business. How was the ownership of the business known as Bailes Best-Made Dog Food prior to the death of Fred Bailes?

A. We went into business together on equal shares. We both worked in it, we established it together. We shared equal parts of all the revenue that came out of the business.

Q. Then what would happen on the death of either one of you?

A. If I should have died before Fred, it would have been his business. If he died before me, it was my business.

On the basis of the widow's testimony alone, this Court would be most reluctant to find Mrs. Bailes had survivorship rights because such claims must be closely scrutinized as indicated in *Alexander, supra*. However, in view of the totality of the circumstances, including the written documents, conduct of the parties and the oral testimony, we find the evidence overwhelmingly supports the conclusion that Fred O. Bailes, Sr. and Juanita Bailes intended and had agreed with each other that the survivor would succeed to ownership of all the assets of the business at the death of the other.

In view of our determination that Mrs. Bailes, for the foregoing reasons, is entitled to full survivorship rights in the business property, it is unnecessary to discuss appellee's cross-appeal contending that he is entitled to 80% of the assets of the partnership.

Since the preponderance of the evidence does not support the trial court's holding, the decree is reversed.

BYRD, J., dissents.