Peter MARTINSON, Mayme Nelson, Irene Fenno, Earl Bogstad, James Bogstad, Ronald Bogstad, Duane Bogstad, Elva Blogg, Darlene Larsen, Darlene Larsen as Trustee for Earl Bogstad, Marjean Evans, Junella Dinwiddie, Melva Anderson and A.G. Dick, Plaintiffs and Appellants,

v.

Mayme HOLSO, individually and as Executrix of the Estate of Orville M. Sparby, Deceased, Albin Overby, the unknown heirs of Jenny Martinson, Deceased, Bennie M. Sparby, Deceased, Clifford B. Sparby, Deceased, Milton S. Sparby, Deceased, and the South Dakota Department of Revenue, Defendants and Appellees.

No. 15829.

Supreme Court of South Dakota.

Argued Jan. 13, 1988.
Decided May 18, 1988.

Donn Bennett of Bennett & Main, Belle Fourche, for plaintiffs and appellants; Edward J. Nelson of Bennett & Main, Belle Fourche, on brief.

Allen G. Nelson and Mark F. Marshall of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, and Leroy Hill of Leroy Hill Law Office, Belle Fourche, for Mayme Holso defendant and appellee.

Martin G. Farrell, Asst. Atty. Gen., Pierre, for State of South Dakota, Dept. of Revenue, defendant and appellee.

MORGAN, Justice.

Plaintiffs and appellants, Martinson, et al. (appellants), appeal from a declaratory judgment entered in favor of defendants and appellees, Holso, et al. (Holso). We affirm.

This action was brought to determine questions arising in the administration of the estate of Orville Sparby, last surviving partner of the Sparby Brothers partnership, and to determine heirs to partnership and personal assets. The trial court determined that all assets, formerly partnership property, were to pass under the last will and testament of Orville Sparby. The court further found that all financial assets were to pass by joint tenancy.

It is not contested that there was a partnership between the Sparby Brothers; Bennie, Clifford, Milton and Orville. What is contested is that there existed a valid oral agreement that the surviving brother or brothers would take all partnership assets. It is further claimed that upon the death of each brother, it was the surviving brothers'

duty or the last surviving partner's representative's duty to wind up, terminate the partnership, and distribute the deceased partner's assets.

Benny Sparby died on October 14, 1975, Benny died a single man, without issue, and never made a will. His estate was never probated. Clifford died on August 13, 1977. He never married, had no issue, and no will. His estate was not probated. Milton died on September 16, 1982. He never married, left no issue, and never made a will. His estate was not probated. Orville Sparby died on August 23, 1985. Orville never married and died without issue. As the last surviving brother of the partnership, Orville left a will which was admitted to probate. Orville left all of his property to his niece, Mayme Holso, whom he also designated to be the executrix of his last will and testament.

The Sparby brothers began their ranching partnership in 1940, with land acquired from their father and using land in both Harding County, South Dakota, and nearby Carter County, Montana. Over the years, the partnership acquired other land. Title to the land was held either individually, as a partnership, under joint tenancy, or as tenancy in common. This property was utilized in the partnership to raise cattle, sheep and hogs. Aside from the funds earned by Bennie Sparby while he served in the United States armed forces during World War II, the only source of funds for the acquisition of the real estate in question was from the ranch partnership. Throughout the partnership, all real estate taxes, without regard for the record title, were paid from Sparby Brother funds. Income tax returns reveal that all income and expense derived from the partnership was allocated equally among the partners, except for a two-year period preceding Bennie Sparby's death. During that period, the income tax returns showed that Bennie Sparby's income was reduced, apparently because he was drawing social security.

A joint checking account was established at the Bank of Belle Fourche as early as 1942. Even though the signators varied from time to time, it was a partnership account. After Milton's death, the account was changed to Orville Sparby or Eleanor Dick, as joint tenants, omitting any reference to "Sparby Brothers." Upon Eleanor's death in 1984, the account was changed to show the joint tenants to be Orville Sparby and Mayme Holso. At the time of Orville Sparby's death, there was a balance of $78,132.58 in the account.

The partnership also established a joint checking account at the First National Bank of the Black Hills in 1955. Following the death of Milton Sparby, the account was changed to Orville Sparby or Mayme Holso, as joint tenants. The balance of the account at the time of Orville's death was $39,726.50.

In 1962, the Sparby brothers jointly rented a safety deposit box from the Bank of Belle Fourche. Following Milton's death, the safety deposit box was rented jointly by Orville Sparby and Mayme Holso. At the time of Orville's death, there was $33,425 in cash in the safety deposit box.

In 1984, Orville Sparby, using what had previously been partnership funds, purchased a $10,000 certificate of deposit at the Bank of Belle Fourche in the names of Mayme Holso and her husband Elvin. This was allegedly intended as a gift.

The evidence demonstrates that all sources of income to any of the brothers were deposited into the partnership accounts, including such items as reimbursement from Medicaid for medical bills. Likewise, all partnership expenses and personal expenses of each of the brothers were paid from the partnership checking accounts. Personal items paid from the checking accounts included payments for medical bills, insurance premiums, groceries, motel bills, federal income taxes, and funeral expenses of deceased partners.

Appellants include nieces and nephews of the Sparby brothers as issue of sisters of the half blood issue of a brother, a sister of the half blood, and the surviving husband of Eleanor Dick, a sister.

Appellants have raised a number of issues which we will consider in several categories. The first area of dispute centers on the effect of the Uniform Partnership

Act, SDCL Chapters 48–1 to 48–5, inclusive, on the validity of an oral partnership agreement, particularly a provision for the surviving partner or partners to take all upon the death of a partner. Procedurally related to that issue is the admissibility of decedent's statements as to conversations with the brothers. (SDCL 19–16–34, decedents' statements admissible.) Does the affirmative defense of laches give greater weight to that testimony? Was there clear and convincing evidence to establish a "survivor takes all" agreement? Finally, what effect would such an agreement have upon the duty of the surviving partner or partners to wind up the partnership upon the death of a partner per SDCL 30–17–9?

The next area of contention centers on specific assets and appellants argue that the trial court erred when it held that

the joint tenancy bank accounts among the brothers from time to time were valid;

the bank account, certificate of deposit and safety deposit box, all denominated in joint tenancy between Orville and Holso were valid;

a provision in a lease/option agreement did not create a vested interest in the subject property in Eleanor; and

a provision in a contract for deed did not create a vested interest in Eleanor.

The last issue that we will consider is whether Orville's will controls the passage of legal title of the partnership real property?

■ We must first determine whether the Uniform Partnership Act (UPA) prohibits such an oral agreement.[1] In *Bailes v. Bailes*, 261 Ark. 389, 549 S.W.2d 69 (1977), the court found that the UPA does not require either the initial partnership agreement, or an agreement which disposes of assets upon the death of a partner, to be in writing. *Citing* to 68 C.J.S. *Partnership*

§ 294a. *See also Balafas v. Balafas*, 263 Minn. 267, 117 N.W.2d 20 (1962); *Jones v. Jones*, 310 N.W.2d 753 (N.D.1981). The *Bailes* court said that an agreement which disposes of assets upon the death of a partner is valid and binding even though it be parol. The actual intent of the parties is important in determining the business relationship between them. *Gammill v. Gammill*, 256 Ark. 671, 510 S.W.2d 66 (1974). In the absence of other partners or creditors, partners can agree that certain matters be handled in a manner different than that provided under the UPA. *Hogan v. Hogan*, 234 Ark. 383, 352 S.W.2d 184 (1961). We find these cases to be persuasive and likewise find no prohibition under the UPA of an oral partnership agreement or an oral survivorship agreement.

■ Appellants' next argument against the oral "survivor takes all" agreement is that the court erred in admitting testimony under SDCL 19–16–34, the Deadman's Statute.[2] The Deadman's Statute operates as an exception to the hearsay rule upon a finding by the trial judge that the statement was made by the decedent and that it was made in good faith and on decedent's personal knowledge. Admission of statements under SDCL 19–16–34 are within the sound discretion of the trial court and such decisions will be upheld in the absence of an abuse of discretion. *In re Congdon's Estate*, 74 S.D. 306, 51 N.W.2d 877 (1952); *Cox v. Bowman*, 71 S.D. 72, 21 N.W.2d 277 (1945). *See also In re Estate of Gosmire*, 331 N.W.2d 562 (S.D.1983). The testimony objected to at trial was adduced from Holso and three disinterested parties based on statements made to them by Clifford, Milton and Orville. Martinson complains that the statements were not made by all of the brothers and that as to the statements attributed to Orville, they were hearsay on hearsay and self-serving.

1. The UPA is contained at SDCL 48–1–1 to 48–5–56. South Dakota adopted the UPA in 1923. 1923 S.D. Sess.L. ch. 296.

2. SDCL 19–16–34 provides:
 In actions, suits, or proceedings by or against the representatives of deceased persons including proceedings for the probate of wills, any statement of the deceased whether oral or written shall not be excluded as hearsay, provided that the trial judge shall first find as a fact that the statement was made by decedent, and that it was in good faith and on decedent's personal knowledge.

The trial court made the requisite finding that the testimony offered pursuant to SDCL 19–16–34 was based on the personal knowledge of the particular Sparby brother it referred to and that such statements were made in good faith. The trial court further found that the testimony came from three disinterested parties and that the testimony was consistent with the actions and dealings of the brothers.

■ With reference to the Deadman's Statute, self-serving testimony is alone insufficient and must be corroborated. *Matter of Estate of Fiksdal*, 388 N.W.2d 133 (S.D.1986); *Matter of Estate of Raketti*, 340 N.W.2d 894 (N.D.1983). In *Raketti*, the decedent's sister testified relative to the decedent's promise. In that case, the court found the testimony to be self-serving and uncorroborated. The court went on, however, to say that the self-serving and uncorroborated nature of the testimony had no effect on the admissibility of the decedent's statements, "but goes to the weight to be accorded Fern's [witness] testimony." *Id.* at 900. The court in *Raketti* said that it was not concerned with the truthfulness of the decedent's statement, but that the fact of the utterance was relevant to the issue of whether or not there was an express agreement. "It is the outward manifestations of assent which govern, not the secret intentions of the parties." *Id.* Holso's testimony in this case was corroborated. The record is replete with corroboration, not only through the course of forty-five years of dealing, but also through the testimony of three disinterested parties.

Appellants next allege that the court erroneously based its admission of testimony under the Deadman's Statute on the defendant's affirmative defense of laches. This argument is somewhat obscure because, while appellants quote some of the trial court's ruling on the admission, he fails to cite us to the appropriate part of the record to permit us to review the ruling.

It appears that what the trial court was saying is that by their failure to raise the issue of termination and accounting to the heirs of the respective partnership interests of the brothers as each of them died, so that the survivors could have testified in person, these heirs could not now complain that their testimony was admitted to say what it is purported that they would have testified to. In view of the fact that these heirs did sit back and await the death of the last of the Sparby brothers before asserting their claim, that ruling has a certain merit. However, we need not rule on that issue because we find that, even excluding the objected-to hearsay, there is an abundance of clear and convincing evidence to support the trial court's holding that the oral agreement did exist and the issue is therefore moot.

■ Appellants next contend that the trial court failed to recognize the duties of the surviving partners and, finally, Holso to wind up and terminate the partnership after the death of each party under the provisions of SDCL 30–17–9. We do not disagree with appellants that under SDCL 48–5–9 dissolution is caused by death of any partner. We do not disagree with appellants that it is a duty, under normal circumstances, for the surviving partners, partner or representative of the last surviving partner, to wind up and terminate a partnership. But the circumstances in this case, a partnership of four bachelor brothers, do not represent the normal situation. In this case, the partners left all of their assets with the partnership and only drew from the financial accounts what they deemed necessary for their necessities. That they chose to leave their assets with the partnership, is their choice. Pursuant to SDCL 48–5–55, *unless otherwise agreed*, a retiring partner or a decedent's legal representative may have the value of their interest ascertained and shall be treated as an ordinary creditor.

In *Johnson v. Munsell*, 170 Neb. 749, 104 N.W.2d 314 (1960), the court held that a technical dissolution of the partnership, by agreement of the partners, was permissible. As we have already held, the oral agreement was valid and, in the absence of other partners or creditors, the partners can agree to handle matters differently

than the dissolution provisions of the UPA. We deem that the agreement that the survivor would take all, necessarily implies that a termination of the partnership was not necessary.

██ We turn then to the area of the trial court's ruling on specific assets. In 1982, Orville Sparby entered into a lease/option agreement with a third party. Within that instrument, Orville attempted to create a joint tenancy between himself and his sister, Eleanor Dick, in the leased property. Approximately eleven months later, upon notification that the purchaser intended to exercise the option to purchase, Orville caused a contract for deed to be prepared which did not mention Eleanor as an owner of the property but did contain a provision which "instructed" that, upon Orville's death, all payments remaining due would pass to Eleanor. It specifically provided that such "assignment to become effective only upon the death of seller." The trial court held that the joint tenancy interest created by the lease/purchase agreement terminated in favor of Orville upon Eleanor's death. Appellants do not argue that a joint tenancy did, in fact, exist. Instead, they seem to argue that a joint tenancy did not exist, on the grounds that the lease/option agreement did not contain a designation as to grantee, nor contain words of transfer. We agree that no joint tenancy was created, due to the absence of a concurrence of the four unities: unity of time, title, interest and possession. *See Schimke v. Karlstad,* 87 S.D. 349, 208 N.W.2d 710 (1973). But that determination is immaterial.

However, appellants urge that the subsequent contract for deed was valid, as a contract for the benefit of a third person under SDCL 53-2-6, and that the provisions of SDCL 43-3-10, defining vested future interests, indicates some legislative favoring of early vesting so that a vested remainder in Eleanor was created in spite of the fact that she predeceased Orville by a year. The trial court found that the terms of the contract evidenced Orville's intent to use and control all of the contract payments during his lifetime and Eleanor would only be entitled to any contract rights after Orville's death. The trial court concluded that the contract and particularly the terms for passing contract rights to Eleanor was a testamentary document and, therefore, void and unenforceable due to failure to comply with the statutory requirement for wills. We agree with the trial court's decision on this issue.

██ When a transfer is made that is testamentary in nature, it must be made with the formalities necessary to create a will. *Estate of Nelson,* 250 N.W.2d 286 (S.D.1977); *N.W. Nat'l Bank of S.F. v. Daniel,* 80 S.D. 528, 127 N.W.2d 714 (1964).

'... An inter vivos transfer or transaction requires that some interest or control, however small, be surrendered and that some right in another party come into being at the time of the transaction. If a purported inter vivos conveyance has no effect whatsoever until death and involves absolutely no surrender or divestiture of control, use, power or interest in the property involved, and creates no present duty or a liability upon the maker and no rights in others, there exists no reason to consider it as inter vivos for it squarely meets the very definition of testamentary disposition and ought to come under the requirements of the statute of wills.'

*Daniel,* 80 S.D. at 530, 127 N.W.2d at 715–16 *citing* 1 Page on Wills § 6.1, p. 218 (Bowe–Parker Revision 1987). A will, on the other hand, does not confer any present right and nothing vests until the death of the maker. *Daniel, supra.* Furthermore, a will is fully revocable until the death of the maker. *Id.* It cannot be argued, by the language of the contract, that Eleanor Dick possessed any control over the contract, the subject of the contract, or the payments received thereunder.

Our decision on the validity of the oral "survivor takes all" agreement likewise disposes of the issues raised by appellants as to the validity of the various joint tenancy accounts, the certificate of deposit, and the safety deposit box lease. We affirm the trial court in that respect.

Finally, we address appellants' last issue, whether Orville's will controls the passage of the legal title of the partnership real property and assets. The record indicates that some of the real property was titled in the names of the partnership and some in the name of one or more of the brothers. As we have previously noted, the record also indicates that all of the land, however titled, was paid for from the partnership funds; all real estate taxes were paid from partnership funds; and, all proceeds from the use of the lands went into the partnership "pot." The Sparby Brothers had a valid agreement whereby the partnership assets passed to the surviving partners and, finally, to Orville as the last of the partners. As such surviving partner, Orville could and did convey by will such title as came to him as the sole surviving partner. The merchantability of those titles is not before us and we do not profess to pass upon that. This decision is, however, res judicata on the validity of the passing of the title through the partnership process to Orville.

We affirm.

WUEST, C.J., and SABERS and MILLER, JJ., and GILBERTSON, Circuit Judge, concur.

GILBERTSON, Circuit Judge, sitting for HENDERSON, J., disqualified.