JADE, INC., Plaintiff and Appellee,

v.

Gerald BENDEWALD, Defendant
and Appellant.

No. 17093.

Supreme Court of South Dakota.

Considered on Briefs Jan. 8, 1991.

Decided March 27, 1991.

Reed Rasmussen of Siegel, Barnett & Schutz, Aberdeen, for plaintiff and appellee.

William D. Gerdes, Aberdeen, for defendant and appellant.

HERTZ, Acting Justice.

Gerald Bendewald (Bendewald) appeals from a judgment establishing the terms of redemption in a foreclosure action brought by Jade, Inc. (Jade). We reverse and remand.

## FACTS

This dispute involves the ownership of real property near Aberdeen, South Dakota, commonly referred to as Richmond Resort (the resort). Prior to April 1988, the resort was owned by William and Bonnie

Mundhenke (Mundhenkes), and Dennis and Patricia Smith (Smiths). Each person owned an undivided one-fourth interest in the resort which was operated by Smiths. In March 1988, Bendewald approached William Mundhenke and Dennis Smith to discuss a possible purchase of the resort. Bendewald was unable to reach an agreement with Mundhenkes but continued negotiations with Smiths.

During this same time, Bendewald asked David Olson (Olson) to become his partner in the planned purchase of the resort. Olson agreed to do so, although no written partnership agreement was ever drafted. Subsequently, Smiths agreed to sell their one-half interest in the resort to Bendewald and Olson. The parties signed an Offer and Agreement to Purchase (Agreement to Purchase) on April 6, 1988, transferring possession of the resort to Bendewald and Olson as of April 1, 1988. In exchange, Smiths were to be paid a downpayment of $7,500 by April 15, 1988, and the remaining balance of $6,000 was due on August 1, 1989. On April 6, 1988, Bendewald gave Dennis Smith two checks, one in the amount of $1,500 and one in the amount of $6,000. At Bendewald's urging, however, Dennis Smith agreed to wait until August 1, 1988, to present the $6,000 check for payment. Additionally, Smiths, Mundhenkes, Olson, and Bendewald orally agreed that Olson and Bendewald would be responsible for making the mortgage payments for the resort.

Bendewald told Olson that he had made the downpayment, although Olson was unaware that Bendewald had convinced Smith to delay seeking payment. Olson then gave Bendewald $4,500 as his initial investment in the partnership. Of this amount, $3,750 was for Olson's half of the downpayment, and the remaining $750 was for his contribution to the initial partnership account. Bendewald placed $750 of Olson's contribution into the partnership account, but took the rest of Olson's contribution.

When Dennis Smith presented the $6,000 check for payment in August, 1988, it was dishonored. In September, 1988, Olson learned that Bendewald did not make the full $7,500 downpayment to Smiths. As a result of this and other disagreements with Bendewald, Olson withdrew from the partnership in September. From that time, Bendewald continued to operate the resort on his own until he closed it on December 14, 1989. After Olson left the partnership, Bendewald failed to make several mortgage payments and other payments were paid with bad checks. Consequently, Mundhenkes were forced to make mortgage payments of $8,200 between October 1988 and July 1989 to avoid foreclosure.

In July 1989, William Mundhenke approached Wesley J. Graybill (Graybill), president of Jade, about selling Mundhenkes' interest in the resort. On August 1, 1989, Graybill spoke with Dennis Smith and William Mundhenke about purchasing the resort in its entirety. On this same date, Bendewald failed to make the final $6,000 payment. In fact, Bendewald and Olson paid only $2,700 of the $13,500 purchase price and defaulted on their agreement to purchase Smiths' one-half interest in the resort. Subsequently, Smith agreed to sell his interest to Jade, and conveyed the two undivided one-fourth interests owned by him and his wife by warranty deed.[1] Smith also assigned to Jade all his rights in the Agreement to Purchase with Bendewald and Olson.

On September 15, 1989, Mundhenkes signed a purchase agreement selling their interest in the resort to Jade. As part of this agreement, Jade agreed to pay mechanics' liens which had been filed against the property due to remodeling work ordered by Bendewald. In return, Mundhenkes lowered the purchase price. Jade eventually paid $8,007.25 to satisfy the mechanics' liens. Mundhenkes signed a warranty deed conveying their interest in Richmond Resort to Jade on December 28, 1989.

---

[1] By this date, Dennis Smith's wife, Patricia Smith, was deceased. Her interest in the resort passed to him on her death.

In addition, Jade obtained an assignment from Olson of all of his rights in the Agreement to Purchase the resort. Olson also gave Jade a quit claim deed transferring all of `his interest in the resort to Jade on October 28, 1989. Then, in January 1990, Jade commenced this action, seeking immediate possession of the resort and requesting that either the Agreement to Purchase be rescinded or, alternatively, that Jade be permitted to foreclose on Bendewald's interest under the agreement to purchase. At the time of the trial, Bendewald had judgments filed against him in Brown County totalling $6,200, plus interest.

The trial court ruled that Jade was entitled to foreclosure and set the amount and period of redemption pursuant to SDCL 21–50–2. In doing so, the court concluded that Olson was free to sell his one-fourth interest in the resort and, consequently, Bendewald was entitled to redeem only a one-fourth interest in the resort. The trial court required that Bendewald make certain payments to redeem his interest in the resort, which will be detailed below in the discussion of that issue.

From this judgment, Bendewald appeals.

### ISSUES

1. Did the trial court err in ruling that Bendewald is entitled to redeem only a one-fourth interest in the resort?

2. Did the trial court equitably adjust the rights of the parties in establishing the amount of redemption?

### ANALYSIS

*1. Bendewald's Interest.*

As his first issue, Bendewald argues that the trial court should have ruled that he was entitled to redeem a one-half interest in the resort, the total interest purchased by the Bendewald–Olson partnership. The trial court concluded that the partnership between Bendewald and Olson was terminated in September, 1988, when Olson left the partnership. The court went on to conclude that Olson was free to sell his one-fourth interest in the resort, and that

accordingly, Bendewald retained only a one-fourth equitable interest.

The resolution of this issue depends on the ability of a partner who has withdrawn from the partnership to convey real property of the partnership after the partnership has been dissolved, but before it has been wound up. As a preliminary matter, it is well established that the terms dissolution and termination represent separate and distinct concepts under the Uniform Partnership Act (UPA), SDCL chs. 48–1 to 48–5. 59A Am.Jur.2d *Partnership* § 809 (1987). Dissolution is "the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business." SDCL 48–5–1; 59A Am.Jur.2d *Partnership* § 808; 68 C.J.S. *Partnership* § 330 (1950). Termination represents the point in time when all partnership affairs are settled or wound up. 59A Am.Jur.2d *Partnership* § 809. After dissolution, the partnership continues and terminates only when the process of completing and settling all partnership business has taken place. SDCL 48–5–2; 68 C.J.S. *Partnership* § 330.

When Olson told Bendewald that he was leaving the partnership, their relationship as partners was dissolved. The two men did not, however, wind up the partnership affairs. They did not settle their accounts with creditors or otherwise agree to dispose of the assets of the partnership. After he left the partnership in September, 1988, Olson did personally pay one outstanding bill, and Bendewald did offer to buy out Olson's interest for $5,000, but he never did so. Because there was no winding up, the partnership was not terminated. SDCL 48–5–2.

The trial court concluded that when Olson told Bendewald he was leaving the partnership, the partnership was then terminated by oral agreement of the partners, relying on our decision in *Martinson v. Holso*, 424 N.W.2d 664, 667 (S.D.1988). In *Martinson*, we held that the UPA does not prohibit the initial partnership agreement or an agreement to dispose of assets on the death of a partner from being orally made.

424 N.W.2d at 667. Our decision went on to hold that termination of the partnership is not necessary where there is an oral agreement for the surviving partners to take all partnership assets and for the partnership to continue rather than dissolve. *Id.* at 669. *Martinson* did not hold that an oral agreement between members of a partnership is sufficient to terminate the partnership. The trial court erred in ruling that the partnership was terminated.

It is undisputed that the resort, which was held in the name of both Bendewald and Olson, was partnership property. *See* SDCL 48–4–1, 48–4–8. The facts here require us to determine whether Olson had the power to assign specific partnership property after dissolution.[2]

■■■■ Dissolution of a partnership does not terminate a partner's right to share in partnership assets. *In re David*, 54 F.2d 140 (S.D.Fla.1931). However, dissolution does not change the status of firm property as an asset of the partnership. *Zimmerman v. Harding*, 227 U.S. 489, 33 S.Ct. 387, 57 L.Ed. 608 (1913). During the life of the partnership, each partner has an equal and undivided interest in the real property of the partnership, referred to as a tenancy in partnership. SDCL 48–4–11, 48–4–12. There are two incidents of the tenancy in partnership: (1) the interest of each partner in specific partnership property is put beyond the reach of the partner's separate creditors; and (2) the interest of each partner in specific partnership property is nonassignable. Annotation, *Construction, Application, and Effect of Uniform Partnership Act, § 25(2)(b), Relating to Nonassignability of Partner's Right in Specific Partnership Property*, 39 A.L.R.2d 1365, 1367 (1955) (*Construction of UPA § 25(2)(b)*); SDCL 48–4–13. The UPA deprives a partner of all power of separate disposition of specific property of the partnership. *Windom Nat'l Bank v. Klein*, 191 Minn. 447, 254 N.W. 602 (1934). Con-

sequently, any attempt by a partner to assign or otherwise convey his or her right is a nullity and void.[3] *Id.*; *Shapiro v. United States*, 83 F.Supp. 375 (D.Minn. 1949). Nowhere in the UPA is the rule of nonassignability abrogated for assignments after dissolution, and accordingly, in the absence of an express exception, the same rule should be applied for both going partnerships and dissolved (but not wound up) partnerships.

The reasons supporting this rule demonstrate its necessity.

> The purpose of the act is plain that all partnership property is to be kept intact for partnership purposes and creditors.

. . . . .

> The reasons for the nonassignability by one partner alone of his interest in specific partnership real or personal property may be summarized as follows: (1) it prevents the interference by outsiders with the conduct of partnership business and the possession, management, and disposition of partnership property; (2) partnership is a voluntary relationship—a person may not have a partner thrust upon him [or her] without his [or her] consent; (3) it is often impossible to measure a partner's beneficial interest in a specific partnership asset; (4) neither other partners nor firm creditors may be deprived of the right to have all firm assets applied to the payment of firm debts; (5) a creditor of one partner may not attach or in any way acquire a lien on specific partnership property to the exclusion of firm creditors or creditors of other partners. *Goldberg v. Goldberg*, [375 Pa. 78, 99 A.2d 474 (1953)], 39 A.L. R.2d 1359.

*Construction of UPA § 25(2)(b)*, at 1367. The effect of Olson's assignment would be to deprive the partnership of its primary asset to be applied to discharge its liabilities when it winds up. While the dilemma

---

**2.** To this date, there has not been a winding up of the partnership.

**3.** The rule that assignments are void is, in regard only to real estate, subject to the provisions of the UPA relating to innocent purchasers.

*Construction of UPA § 25(2)(b)*, 39 A.L.R.2d at 1367. Jade was fully aware of the irregularities at issue here. Thus, Jade is not an innocent purchaser, and we need not address the UPA provisions regarding third party purchasers without knowledge.

faced by Olson was a difficult one, the UPA provides an alternative for just such situations. Olson had the right to seek an accounting from the date of dissolution and to seek a judicial winding up of the partnership. SDCL 48–5–28, 48–5–56.

 Because Olson lacked the power to assign or otherwise convey his interest in specific real property of the partnership, the assignment and quitclaim deed purporting to transfer his interest in the resort are null and void. Olson could have assigned his interest in the partnership itself but did not. *See* SDCL 48–4–19. Thus, the dissolved Bendewald–Olson partnership retained the entire one-half interest in the resort, subject to the winding up of the partnership. In the foreclosure action brought by Jade, then, Bendewald was entitled to redeem a one-half interest in the resort, the total equitable interest held by the partnership. Thus, the trial court's ruling that Bendewald could redeem only a one-fourth interest was erroneous.

### 2. Amount of Redemption.

Trial courts have statutory authority to "equitably adjust the rights of all the parties" in actions for foreclosure of real estate contracts. SDCL 21–50–2. The trial court required that Bendewald make the following payments to redeem a one-fourth interest in the resort:

a. $5,400.00 on the Offer and Agreement to Purchase plus 15 percent interest from and after August 1, 1989. This amount represents [Bendewald's] one-half interest in the remaining purchase price of $10,800.00.

b. $2,500.00 in attorneys' fees. The balance of the attorneys' fees are not related to the foreclosure action.

c. $4,100.00 for the mortgage payments made by Mundhenke plus 15 percent interest from and after July 31, 1989. [Jade] is entitled to claim this compensation due to [his] purchasing of the Mundhenkes' interest.

d. $6,200.00 plus interest to satisfy the Brown County Judgments. These Judgments will be a lien against the property should [Bendewald] redeem. SDCL 15–16–7.

e. $1,050.00 on the Olson Assignment of Rights plus 15 percent interest from and after April 1, 1988. This amount represents the sum of $3,750.00 paid by Olson as one-half of the original downpayment minus the $2,700.00 which was actually paid by [Bendewald].

f. $190.03 for costs. Costs of preparing the transcripts for the prior proceeding and costs incident to that proceeding are disallowed.

Bendewald does not challenge the payment of the principal balance of $10,800 to redeem a one-half interest in the resort. He also does not take exception with the requirement that he pay $190.03 in costs. Bendewald challenges provisions b, c, d, and e, and his arguments will be addressed in that order.

 Bendewald first contends that the award of $2,500 in attorney fees was "exorbitant." It is well established that reasonable attorney fees may be awarded in actions to foreclose on real estate contracts. SDCL 21–50–4 (attorney fees awarded as part of costs); *Wolken v. Bunn*, 422 N.W.2d 417, 420 (S.D.1988) (same); *Dow v. Noble*, 380 N.W.2d 359, 360 (S.D.1986) (attorney fees may be included as part of balancing equities). Here, the trial court ordered that attorney fees be paid in order for Bendewald to redeem his interest. When included as part of the equity of redemption, we review the trial court's award of attorney fees under the clearly erroneous standard. *Dow*, 380 N.W.2d at 360. Jade sought attorney fees of $6,043.67, but the trial court awarded only the portion of the fees related to the foreclosure action. Such an award is consistent with the intent of the law and is not clearly erroneous.

██ Next, Bendewald argues that it was inappropriate to require him to reimburse Jade for $4,100 representing over half the mortgage payments that Mundhenkes paid. As noted above, although Bendewald and Olson agreed to assume the mortgage payments, Mundhenkes were

forced to pay $8,200 between October 1988 and July 1989 to avoid foreclosure by the bank. Bendewald's challenge is based on the fact that Mundhenkes made the payments, not Jade, and that Mundhenkes are not a party to this action. In his brief, Bendewald cites *Beitelspacher* for the proposition that, on foreclosure, the trial court can adjust only the rights of the parties to the real estate contract then being foreclosed, not outside rights. Contrary to this assertion, *Beitelspacher* did not address this issue.

Factually, Bendewald and Olson were obligated to make the mortgage payments between October 1988 and July 1989 for the benefit of Mundhenkes and Smiths. Even though the agreement to make the mortgage payments was not contained in the Agreement to Purchase, it is clear that the assumption of this obligation was part of the consideration paid for the resort and the right to operate it. If Bendewald is not required to reimburse Mundhenkes for these payments, he would be unjustly enriched. He would be permitted to avoid his obligation to make $8,200 of mortgage payments. Jade is entitled to the reimbursement as successor to Mundhenkes' interest. Equity supports the trial court's requirement that Bendewald reimburse Jade for mortgage payments previously made by Mundhenke.

■ Next, in subparagraph d, the trial court ordered Bendewald to satisfy judgments filed against him in Brown County, amounting to $6,200, plus interest. Bendewald argues that the trial court exceeded its authority because the judgments are outside the contract being foreclosed, and the debts are owed to persons who are not involved in this action. In response, Jade argues that the judgments are a proper subject of equitable redemption because they affect the property at issue. If Bendewald redeems his interest in the resort he will become a co-owner along with Jade. Because the judgments against Bendewald would automatically become a lien on the resort by operation of SDCL 15–16–7, Jade's rights in the property would be impaired. It is within the trial court's authority to adjust *all* of the parties' rights in regard to the property. SDCL 21–50–1.

■ Finally, Bendewald challenges subparagraph e, ordering him to pay $1,050, plus interest, on the "Olson Assignment of Rights." He argues that any amount due to his former partner is the proper subject of a suit to which Olson is a partner and the winding up of the partnership is at issue, not here in Jade's foreclosure action. Jade counters that the amount represents the return of Olson's money which Bendewald did not apply toward the downpayment on the Agreement to Purchase, and that as assignee of Olson, Jade is entitled to receive this payment.

In light of our conclusion that Olson was without power or right to assign or otherwise convey his interest in the resort, and that the quitclaim deed and assignment are a nullity, there is no basis for the order that Bendewald pay $1,050 on the "Olson Assignment of Rights." While Olson, or his successor in interest, may be entitled to reimbursement for Olson's contribution which was diverted, the proper remedy is to seek a judicial winding up where all the rights in regard to the partnership may be adjudicated.

■ Also noted by Bendewald is the trial court's failure to address the improvements that he made to the resort, which he contends have increased the value of the property. The trial court did not make a finding on this issue, which was a matter of dispute between the parties. On redemption a party is generally entitled to a credit for improvements made, but there must be adequate evidence in the record to support such a set off.

■ Here, Bendewald testified that his actual out-of-pocket expenses were in excess of $13,000, and that the amounts of the mechanics' liens were in addition to this figure. The trial court refused to admit into evidence the ledger sheets detailing these expenses because Bendewald failed to produce them or any other documentation regarding these claimed expenses prior to trial. On remand, the trial court is directed to make a finding regarding

whether improvements were made which increased the value of the property and, if there is credible evidence regarding the value of such improvements in the record, to reduce the amount of redemption by that amount.

In light of our conclusion that Bendewald is entitled to redeem a one-half interest in the resort, and that there can be no amount due on Olson's assignment because it was void, this matter is reversed and remanded for proceedings consistent with this opinion.

MILLER, C.J., and WUEST, HENDERSON and SABERS, JJ., concur.

AMUNDSON, Justice, not having been a member of the Court at the time this case was considered, did not participate.